ANTHONY SKULSKI, THEODORE PROCTOR, MICHAEL J. PRESTIA, FRANK J. MOORE, EDWARD T. BADGER, EDNA M. O'NEILL, RAFFAELA MIGLIOCCIO, MICHAEL BONELLI, JAMES DeFELIPPO, FLORENCE KISLER, AND ALMA E. BURKE, PLAINTIFFS-APPELLANTS, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

HELEN WISNIEWSKI, JOHN H. FITZHENRY, JAMES P. CLARK, ADRIAN BRIED, JOSEPH CAPPUCCIO, ELIZABETH DWYER, MARGUERITE CLEMONS, THOMAS J. NATALE, JOHN REIDY, EDWIN M. REILLY, ELIZABETH SHARP, FRANK ESPOSITO, ELIZABETH CIRILLO, THEODORE WRONSKI, ANNA J. ANDREWS, PLAINTIFFS-APPELLANTS, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

JOSEPH GALANO, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

FRANK STEARNS, NICHOLAS FIORE, WILLIAM WHITE, IRVING BARKAN, AND VINCENT L. BODSON, PLAINTIFFS-APPELLANTS, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

DENNIS J. MURRAY, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

GEORGE L. HILLIARD, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

WILLIAM FLAHERTY, NICHOLAS GRABLER AND JOHN FENNELLY, PLAINTIFFS-APPELLANTS, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

FRANCIS L. BOYLE, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

VERONICA TUOHY, ANTHONY MARCHIANO, LAWRENCE KELLY, AND SOLOMON KAMINSKY, PLAINTIFFS-APPELLANTS, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

ROBERT BRADLEY, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

FRANCES CLOUD, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

WILLIAM MacPHAIL AND JOHN GROCHOWSKI, PLAINTIFFS-APPELLANTS, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

MICHAEL G. CARRIG, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

ANDREW GROGAN, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

MARY KAPP, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

MARGARET RYAN, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

FLOYD SMITH, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

JOHN E. ANNITTO, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

MORRIS CHESLER, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

GERTRUDE CRONIN, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

JOSEPH DeLONG, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

SAM DiNARDO, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

WILLIAM STEINMETZ, PLAINTIFF-APPELLANT, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES' PENSION COMMISSION, DEFENDANT-RESPONDENT.

Argued April 28, 1975—Decided July 17, 1975.

186

*Mr. James E. Flynn* and *Mr. Gerald D. Miller* argued the cause on behalf of all appellants. (*Mr. James E. Flynn,* attorney for appellants Frances Cloud, Helen Wisniewski, John Fitzhenry, James Clark, Adrian Bried, Joseph Cappuccio, Elizabeth Dwyer, Marguerite Clemons, Thomas Natale, John Reidy, Edwin Reilly, Elizabeth Sharp, Frank Esposito, Elizabeth Cirillo, Theodore Wronski, Anna J. Andrews). (*Messrs. Miller, Hochman, Meyerson & Miller,* attorneys for appellants Frank J. Stearns, Nicholas Fiore, William White, Irving Barkam and Vincent L. Bodson).

*Mr. Brett S. Dankoff* argued the cause for appellant Robert Bradley (*Messrs. Chasan, Leyner, Holland and Tarrant,* attorneys).

*Mr. George J. Kaplan* argued the cause for appellant Michael G. Carrigg (*Edward J. Lynch,* attorney).

*Mr. Lawrence P. Brady, Jr.* argued the cause for appellant Joseph DeLong, (*Messrs. Doyle & Brady,* attorneys).

*Mr. James F. Ryan* argued the cause for appellants Veronica Tuohy, Anthony Marchiano, Lawrence Kelly and Solomon Kaminsky.

*Mr. Brian Boyle* argued the cause for appellant Francis L. Boyle.

*Mr. Jay Scott MacNeill* argued the cause for respondent Joseph M. Nolan (*Messrs. Nolan, Lynes, Bell & Moore,* attorneys).

*Mr. Walter S. Cramer* appeared for appellant Andrew Grogan.

*Mr. John M. Strichek* appeared for appellant Dennis J. Murray.

*Mr. Howard B. Cubberly* appeared for appellant Floyd Smith.

*Mr. Seymour Margulies* appeared for appellants John Annitto and Morris Chesler (*Messrs. Brigadier & Margulies,* attorneys).

*Mr. J. Leonard Hornstein* appeared for appellant Mary Kapp (*Messrs. Hornstein & Hornstein,* attorneys.)

*Mr. Timothy K. Madden,* Director, Hudson County Legal Services Corporation filed a brief on behalf of appellants Anthony Skulski, Theodore Proctor, Michael J. Prestia, Frank J. Moore, Edward T. Badger, Edna M. O'Neill, Ra-

faela Migliaccio, Florence Kisler, Alma Burke, Michael Bonnelli, and James De Fellippo.

*Mr. Nicholas H. Politan* filed a letter in lieu of brief on behalf of appellant Joseph Galano (*Messrs. Checki and Politan,* attorneys).

*Mr. Robert A. Elkins* filed a letter in lieu of brief on behalf of appellant Gertrude Cronin (*Messrs. Elkins & Elkins,* attorneys).

*Mr. Joseph T. Ryan* filed a brief on behalf of Margaret Ryan (*Messrs. Lamb, Hutchinson, Thompson & Chappell,* attorneys).

*Mr. Charles H. Landesman* filed a brief on behalf of appellants William MacPhail and John Grochowski (*Messrs. Law, Froelich & Landesman,* attorneys).

*Mr. Michael F. Reilly* filed a brief on behalf of appellant George Hilliard.

*Mr. John P. Doran* filed a brief on behalf of appellants William Flaherty, Nicholas Grabler and John Fennelly.

Appellant Sam DiNardo did not file a brief.

Appellant William Steinmetz did not file a brief.

The opinion of the Court was delivered by

PASHMAN, J. This is a series of consolidated cases consisting of 23 appeals involving 57 individuals whose previously granted disability pensions were discontinued by a court-appointed receiver for the Hudson County Pension Commission. The trial court reinstated most of the pensions but the Appellate Division reversed in all but one

case which is not included in these appeals. We granted the pensioners' petitions for certification, 67 *N. J.* 72–76 (1975), to establish guidelines governing the termination of disability pensions, and to consider the applicability of our decision in *Ruvoldt v. Nolan,* 63 *N. J.* 171 (1973) to the present dispute. We have concluded that the Appellate Division must be reversed and the appeals remanded to the trial court for disposition in accordance with the principles we set forth today.

The pension disputes which are the subject of the present appeals had their genesis in a 1971 grand jury investigation of the operation of the Hudson County Pension Commission. The investigation ultimately led to the indictment and conviction of the five members of the Commission for criminal activity in connection with their official duties. See *State v. Deegan,* 126 *N. J. Super.* 475, 480 (App. Div. 1974), certif. den. 65 *N. J.* 283, 284 (1974).[1] Prior to the trial, however, the Attorney General instituted a civil action in the Superior Court, Chancery Division, seeking, among other things, the appointment of a receiver on the grounds of alleged mismanagement and fraud on the part of the Commission. See *Ruvoldt v. Nolan,* 63 *N. J.* 171, 173 (1973). By order dated March 1, 1972, the Chancery Division appointed defendant as receiver, vested with all the functions, powers and duties of the commission.

Although he continued pensions granted for age and service, the receiver suspended payment of disability pensions. Notices of suspension were distributed to all affected pensioners together with forms requesting medical and other pertinent information. After reviewing the material submitted, the receiver continued in effect the suspensions of over 200. Prior to formal termination, however, hearings

---

[1]The Commission's examining physician was also indicted for conspiracy but was acquitted by the jury. *State v. Deegan, supra,* 126 *N. J. Super.* at 480.

were held by court-appointed hearing examiners. The receiver made an independent review of the findings of the examiners before ultimately terminating approximately 205 disability pensions. Those who desired reconsideration were also afforded a rehearing before a hearing examiner and further review by the receiver.

The pensioners sought review in the Superior Court, Chancery Division, to determine the validity of the pension terminations. Based upon the record compiled by the receiver and additional testimony presented in support of the claims of various pensioners, the trial court rendered judgment against five of the pensioners,[2] expressly relying on the decision in *Ruvoldt,* but reversed the receiver in all the other cases, thus reinstating the pensions. The court also denied the receiver's counterclaim for return of pension funds in all cases.

In reaching his decision, the trial judge rejected the receiver's contention that the principles set forth in *Ruvoldt* "were for Ruvoldt only," and thus inapplicable to the instant cases. Relying on *Ruvoldt,* the trial court concluded that in those cases in which reinstatement was warranted, "the combination of lapse of time, together with the findings of non-involvement in any wrongdoing, the reliance of plaintiff upon the pension grant, and the accompanying irrevocable change of position" precluded the termination of the pensions.[3] In several of the cases, the court emphasized that an important factor in his finding of unreasonable delay in reopening the pension awards was the intervening death of the Commission's Medical Examiner:

---

[2]The trial court affirmed the receiver's termination of pensions in *Burke v. Nolan,* A–111–74; *Fiore v. Nolan,* A–114–74; *Bradley v. Nolan,* A–126–74; *Cloud v. Nolan,* A–127–74; and *Steinmetz v. Nolan,* A–133–74.

[3]The trial court issued separate written opinions in each case using several similar formats.

> Until November 28, 1966, Dr. Vincent P. Butler, the Medical Director for the Hudson County Pension Commission, conducted all medical examinations in disability cases and rendered opinions to the Pension Commission concerning the eligibility of applicants for pensions. As of that date, by reason of illness, his assistant took over. Dr. Butler made no examinations after November 28, 1966. On March 5, 1967 Dr. Butler died. He was not, therefore, available to testify at the hearing before the Receiver or at the Court hearing. This constituted a distinct disadvantage to the plaintiff in that Dr. Butler was not available to support his medical opinions. That disadvantage will be overcome by establishing November 28, 1966 as a line of demarcation between what I regard as reasonable and what I regard as unreasonable in this case. There is a lapse of about six years between that date and the date of most of the revocations of the pension awards by the Receiver.

In the five cases in which the receiver's termination of pensions was sustained, the pension had been awarded less than six years prior to suspension by the receiver.[4] Finding that the "totality of the circumstances" did not preclude an examination of the validity of the pension grants, the court concluded that there was insufficient evidence of disability or work connection, or both to justify the pension awards. Finding the pension grants illegal, the trial court upheld the termination of said pensions in those five cases. The receiver and the five pensioners whose terminations were affirmed appealed the judgments of the trial court.

On May 8, 1974, in an unreported opinion, the Appellate Division considered the single issue of the retroactivity of L. 1973, c. 345 which substantially amended the pension statutes applicable to Hudson County.[5] In concluding that the amendments should be given prospective effect only and were inapplicable in all of the cases under review, the court

---

[4]Four of the five received their pensions in 1968. The fifth was not awarded a pension until 1970.

[5]L. 1973, c. 345 was approved on December 27, 1973. Pursuant to § 15 of the chapter, however, the act did not become effective in Hudson County until January 10, 1974 when the Hudson County Board of Freeholders adopted the measure by resolution.

emphasized that the act "reveals neither words nor meaningful suggestion that the Legislature intended that the new statutory approach to pensioners' rights have retrospective application."

On June 14, 1974 the Appellate Division considered 55 consolidated pension appeals in a second unreported opinion. Before examining the merits of the individual appeals the court discussed the general principles governing its review. In the court's view, when the receiver's reconsideration of a pension grant discloses that the award is "arrantly illegal," he has the duty to terminate the pension without regard to other considerations. Where the receiver's review of an award reveals that the propriety of a pension grant is "reasonably debatable," however, he must consider the surrounding circumstances to determine whether other compelling considerations exist which in justice and fairness operate as a bar to his authority to terminate apparently illegal pension grants. Applying these principles to the individual appeals, the Appellate Division reversed the trial court's reinstatement of pensions in 49 cases. Five cases were remanded to the Chancery Division for further fact finding, and in one case the Division affirmed the reinstatement of plaintiff's pension. With respect to the five pensions which the trial court found to have been illegally granted, the court in separate opinions, affirmed substantially for the reasons expressed below. We granted the pensioners' petitions for certification on January 14, 1975. 67 *N. J.* 72–76 (1975).

## I

Although two of the pensioners in the cases before us were awarded benefits pursuant to *N. J. S. A.* 43:10–3,[6] most of the pensions were granted in accordance with *N. J.*

---

[6]*Annitto v. Nolan,* A–116–74; *Bradley v. Nolan,* A–126–74.

*S. A.* 43:10–4.[7] The time interval between the initial pension grants and termination by the receiver ranged from two to 27 years. It is this lapse of time which raises some of the most troublesome questions in these appeals.

At the outset it is appropriate to observe that the trial court was correct in rejecting the receiver's argument that our decision in *Ruvoldt* was "for Ruvoldt only." In *Ruvoldt,* an assistant prosecutor had been awarded a disability pension by the same Commission which granted the benefits in the instant appeals. The receiver terminated the pension but the trial court reversed. We affirmed the judgment of the trial court without reaching the merits of Ruvoldt's entitlement

---

[7]The statutory provisions provide:

43:10–3. Retirement for service and disability

An employee of a county of the first class who shall have served in the county's employ for a period of twenty years and shall have been found, as hereinafter provided, to be physically unfit for further service, shall, whether or not he has reached sixty years of age, upon written application to the pension commission, be retired on half **pay.**

43:10–4. Retirement for disability, injury or disease; examination; determination by commission

A county employee who shall have received a permanent disability by reason of injury, accident or sickness, incurred at any time in the service, which permanently incapacitates him, shall, upon the certificate of a physician designated for that purpose by the pension commission, be retired on half pay.

When a county employee desires to retire by reason of injury or disease, he shall apply in writing to the pension commission for retirement. Thereupon, the pension commission shall call to its aid a regularly licensed and practicing surgeon or physician and the person making the application may likewise call to his aid a regularly licensed and practicing surgeon or physician. The president of the pension commission may administer oaths to any persons called before the commission regarding the matter. If the two surgeons or physicians so called fail to agree upon the physical condition of the applicant, the pension commission may call a third and disinterested, licensed and practicing physician or surgeon and the determination of a majority of them, they having been first duly sworn, shall be reduced to writing and signed by them. The commission shall decide, by resolution, whether the applicant is entitled to the benefits of this article and shall consider the physicians' or surgeons' determination in reaching its decision.

to the pension based upon our conclusion that the issue was "reasonably debatable" and that "[i]t would be essentially unjust to undo the pension grant so many years later after such circumstances of reliance and irremediable change of position as here manifested." *Ruvoldt, supra,* 63 *N. J.* at 185. While we were careful to note that in deciding *Ruvoldt* we did not wish to be understood to express any views on the pension cases then pending before the trial court, see *Ruvoldt, supra,* 63 *N. J.* at 174, our approach in *Ruvoldt* provides a useful starting point for evaluation of the present termination appeals.

██ Our analysis in *Ruvoldt* proceeded from the premise that in our State, absent legislative restriction, administrative agencies have the inherent authority to reopen and modify previous orders. *Ruvoldt, supra,* 63 *N. J.* at 183; *Handlon v. Belleville,* 4 *N. J.* 99, 106–107 (1950); *Central Home Trust Co. v. Gough,* 5 *N. J. Super.* 295, 301 (App. Div. 1949) (alternate holding). See also *New Jersey Bell Telephone Co. v. Bd. of Public Utility Comm'rs,* 12 *N. J.* 568, 578–79 (1953); *McFeely v. Bd. of Pension Comm'rs,* 1 *N. J.* 212, 217–18 (1948). In *Handlon, supra,* however, we specifically qualified the general principle by adding that:

> Barring statutory regulation the power [of reconsideration] may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law. But there must be reasonable diligence. [4 *N. J.* at 106–07 (insert added)][8]

The limitation of reasonable diligence in reopening prior administrative determinations has been recognized in cases decided since *Handlon, supra, e. g., Paterson v. Div. of Tax Ap-*

---

[8]See also *Air-Way Branches, Inc. v. Bd. of Review,* 10 *N. J.* 609, 614 (1952), where the Court observed:

> Our courts have given firm recognition to the enlightened view that, in appropriate situations, administrative agencies may rightly advance the interests of justice by exercising powers, comparable to those possessed by the courts, of reopening their determinations for further consideration and disposition.

*peals,* 40 *N. J. Super.* 543, 546 (App. Div. 1956) ; *In re Appeal of Newark,* 37 *N. J. Super.* 175, 181 (App. Div. 1955), and this Court reaffirmed the principle in *Burlington County Evergreen Park Mental Hospital v. Cooper,* 56 *N. J.* 579, 600 (1970), where we said that the power of administrative reconsideration "must be exercised reasonably and application seeking its exercise must be made with reasonable diligence."

Our decision in *Ruvoldt* requires us to consider the factors which must be evaluated in determining what is a reasonable time for purposes of reconsideration of administrative decisions. While recognizing that the time element following the original decision is one factor for consideration, Judge Conford, speaking for our Court, also emphasized that other circumstances must be weighed in reaching a decision :

There is emphasis in the cases on the requirement that such action must be taken within a reasonable time or with reasonable diligence. But what is a reasonable time must perforce depend on the interplay with the time element of a number of other attendant factors, such as the particular occasion for administrative reexamination of the matter, the fraud or illegality in the original action and any contribution thereto or participation therein by the beneficiary of the original action, as well as the extent of any reliance or justified change of position by parties affected by the action. [63 *N. J.* at 183–84].

Applying these principles to the facts in *Ruvoldt,* we concluded that the delay which preceded the receiver's termination was not deliberate, that "Ruvoldt cannot justly be tarred by the brush of the investigation resulting in the indictments and convictions." *Ruvoldt, supra,* 63 *N. J.* at 184. We also noted that although Ruvoldt's pension application was processed in a somewhat perfunctory fashion, it was "seemingly in conformance with the statutory procedure * * *." Based upon our finding that the Commission's grant of Ruvoldt's pension was not an "arrantly illegal act," taken in conjunction with his reliance upon the award, we were persuaded that it would be unjust to reopen Ruvoldt's case eight years after the original administrative action. *Ruvoldt, supra,* 63 *N. J.* at 184–85.

We continue to adhere to the general approach of *Ruvoldt,* and accordingly conclude that at least with respect to the pension cases at issue in this appeal, there are indeed limits upon the authority of the Commission, here exercised by defendant receiver acting as the alter ego of the Commission, to reconsider previously granted pensions. As in *Ruvoldt,* many, if not all, of the pensioners involved in the instant appeals have relied upon the awards by the Commission made as long ago as 1945,[9] in foregoing other opportunities which may have otherwise been available to them. For these pensioners "the course of events cannot be rerun." *Ruvoldt, supra,* 63 *N. J.* at 185.

In addition to the reliance factor which we identified in *Ruvoldt,* there are other considerations which bear upon our decision on the reconsideration issue as it pertains to these cases. While we are sensitive to the general policy considerations against dissipation of public funds through unauthorized pension grants, see *Tubridy v. Consolidated Public & Firemen's Pension Fund Comm'n,* 84 *N. J. Super.* 257, 263 (App. Div. 1964), we believe that a helpful analogy can be drawn between the conflicting considerations in these cases and the observations of the Court in *Tremarco Corp. v. Garzio,* 32 *N. J.* 448 (1960). The question before the Court in *Tremarco* was whether certain acts taken by the holder of a validly issued building permit constituted sufficient reliance to bar the subsequent revocation of the permit. 32 *N. J.* at 455. In resolving the issue we rejected a mechanical approach to the problem:

> There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. We think there is no profit in attempting to fix some precise concept of the nature and *quantum* of reliance which will suffice. [32 *N. J.* at 457].

---

[9]Plaintiff in *Clemons v. Nolan,* A–112–74, was awarded a disability pension in April 1945.

Balancing the interests of the permittee against the duties of the municipality in planning and zoning matters, we concluded that in the circumstances disclosed by the record, "the equities strongly predominate in favor of plaintiff." 32 *N. J.* at 458. See also *Gruber v. Mayor & Tp. Committee,* 39 *N. J.* 1, 19 (1962).

The foregoing should serve to illustrate that even with respect to public entities, equitable considerations are relevant in evaluating the propriety of conduct taken after substantial reliance by those whose interests are affected by subsequent actions. In *Summer Cottagers' Ass'n v. Cape May,* 19 *N. J.* 493, 504 (1955), we said that "[t]he doing or forbearing to do an act induced by the conduct of another may work an estoppel to avoid wrong or injury ensuing from reasonable reliance upon such conduct." After emphasizing that the concept of estoppel is not applied as readily against the public as against private persons, we added that:

> There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are *ultra vires* in the primary sense and void; the latter, *ultra vires* only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice. [19 *N. J.* at 504].

See also *405 Monroe Co. v. Asbury Park,* 40 *N. J.* 457, 462–63 (1963); *Vogt v. Borough of Belmar,* 14 *N. J.* 195, 205 (1954); *Hill v. Bd. of Adjustment,* 122 *N. J. Super.* 156, 162 (App. Div. 1972); *Dambro v. Union County Park Comm'n,* 130 *N. J. Super.* 450, 457 (Law Div. 1974).

A parallel can be drawn between our observations concerning estoppel and municipal corporations in *Summer Cottagers' Ass'n* and the course of conduct by the Commission in the appeals before us. Accordingly, we conclude that it is appropriate for us to weigh equitable considerations, par-

ticularly the reliance factor, on the part of the pensioners in evaluating the present dispute.[10] Recognition of the relevance of these considerations in the resolution of the present appeals convinces us that it would be essentially unjust to permit the receiver to reopen those cases in which the pensioner made his application in the good faith belief that he met the statutory requirement for entitlement, and he subsequently relied upon the pension award in declining to secure subsequent full-time employment either within or without the county, thereby foreclosing the opportunity to secure alternate pension benefits.[11]

Accordingly, we have concluded that the interests of justice will best be served in these cases by employing a two step approach. The first phase of the inquiry concerns the threshold question of the propriety of reexamining the merits of a prior pension grant. Except to the extent noted

[10]See also 2 *Davis, Administrative Law*, § 18.09 at 607 (1958), where the author, in discussing the applicability of the concept of *res judicata* to administrative proceedings, observes:

When statutes are silent and legislative intent unclear, agencies and reviewing courts must work out the practices and the limits on reopening. The considerations affecting reopening to take account of new developments or of new evidence of old developments often differ from those affecting the correction of mistakes or shifts in judgment about law or policy. Usually the search for a basic principle to guide reopening is futile; the results usually must reflect the needs that are unique to each administrative task. Factors to be weighed are the advantages of repose, the desire for stability, the importance of administrative freedom to reformulate policy, the extent of party reliance upon the first decision, the degree of care or haste in making the earlier decision, the general equities of each problem.

[11]We are not concerned herein with the question of administrative reconsideration of a pension grant in light of doubts as to the caliber of a pensioner's public service. For a recent case dealing with the problem of *suspension* of a pension as a result of criminal indictments returned subsequent to a pension award, see *Mount v. Trustees of the Public Employees Retirement System*, 133 *N. J. Super.* 72, 86 (App. Div. 1975). But see *Leonard v. Seattle*, 81 *Wash.* 2d 479, 503 *P.* 2d 741 (1972) (*en banc*).

below, the merits of the arguments for or against entitlement itself are not pertinent to this phase of the proceedings. With respect to this aspect of the inquiry, the pensioner will have the burden of coming forward with evidence of such facts and circumstances as will justify the conclusion that the merits of his entitlement to pension benefits should not be reexamined. This determination will be based on proofs by pensioner which may include the following:

 (1) the applicant's subjective good faith belief that he was entitled to benefits;

 (2) the extent of the applicant's change of position in reliance on the initial pension grant; and

 (3) the extent to which the applicant's reliance has foreclosed alternate opportunities for pension benefits.

We deem it appropriate to place the burden of coming forward with evidence on these matters upon the pensioner since he is in a better position than the receiver to produce such evidence. With respect to the time period between the initial grant and the receiver's reconsideration, the receiver will have the burden of both coming forward and burden of proof (persuasion) that action was taken within a reasonable period and with reasonable diligence. The Board is in a better position to know these facts.

 However, the burden of proof (persuasion) as to this first phase shall devolve upon the receiver. Therefore, in addition to cross-examination and counter proofs as to the foregoing, the receiver may present proofs as to fraud or illegality in the original application and any contribution thereto or participation therein by the pensioner as part of the first phase of the inquiry. If, but only if, the receiver sustains his burden of proving that the pension award should be reconsidered, the second phase of the inquiry becomes material, that is, a determination as to whether the applicant was medically entitled to a pension pursuant to the statute.

At the said second phase, the original decision of the Commission in awarding the pension is still entitled to a presumption of validity and, accordingly, the receiver should bear the onus of proving that the applicant was not entitled to the pension at the time of the original grant. It may satisfy this burden by a preponderance of the evidence as to the invalidity of the original action. Moreover, in weighing the evidence, pensioners may not be penalized for absence of proofs due to intervening death or unavailability of witnesses or proofs lost by reason of lapse of time.

Our review of the testimony before the trial court reveals that the evidence presented was primarily intended to establish medical entitlement on the part of the applicant. As we have pointed out, this is only one part of the inquiry and is not germane to the threshold question of whether the merits of the pensioners' entitlement should be reconsidered at all. Accordingly, we have concluded that the instant appeals must be remanded to the trial court for further proceedings consistent with the standards we have developed. Thus the trial court must determine first whether the pension grants should be reopened at all and if so, whether the receiver has sustained his burden of showing that the individual applicants were not entitled to benefits measured against the standards set forth herein.

We pause to add a cautionary observation at this juncture. We do not wish to be understood by any of the foregoing observations to countenance loose, incomplete or fraudulent review of pension applications at the time they are made. Such commissions have a statutory duty to make prompt, diligent inquiry into the merits of each application, and we expect that this responsibility will be discharged promptly and professionally in the future.

II

As we have indicated, the trial court upheld the receiver's pension termination in five of the cases before us upon a

finding of insufficient evidence of disability or work connection to sustain the award. Because of the trial court's reliance on *Russo v. Teachers' Pension & Annuity Fund*, 62 *N. J.* 142 (1973) on the issue of job connection and our determination that the latter five cases must be remanded, it is necessary to consider the standards governing "permanent disability * * * incurred * * * in the service" of the county as those terms are used in *N. J. S. A.* 43 :10–4.[12]

 Preliminarily, it should be noted that we agree with the Appellate Division that *L.* 1973, *c.* 345 must be given solely prospective effect and is thus inapplicable to any of the cases under review. Our decisions reflect the general principle that in construing legislation, statutes should not be given retrospective application unless such an intention is manifested by the Legislature in clear terms. Thus in *Kopczynski v. County of Camden*, 2 *N. J.* 419, 424 (1949) we said:

> A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the [L]egislature cannot otherwise be satisfied.

See also *Rothman v. Rothman*, 65 *N. J.* 219, 224 (1974) (contrary intent shown) ; *Alongi v. Schatzman*, 57 *N. J.* 564, 578 (1971) ; *Nickell v. Gall*, 49 *N. J.* 186, 189 (1967) ; *LaParre v. Y.M.C.A.*, 30 *N. J.* 225, 229 (1959) ; *In re Glen Rock*, 25 *N. J.* 241, 249 (1957) ; *Nichols v. Bd. of Education*, 9 *N. J.* 241, 248 (1952) ; 2 *Sutherland, Statutory Construction*, § 41.04 at 252 (Sands Ed. 1973). Our examination of *L.* 1973, *c.* 345 reveals no intention on the part

---

[12]In the Appellate Division opinion, the law governing "injury, accident or sickness, incurred . . . in the service" was uncertain at the time of the original pension grants, and accordingly the court applied the workmen's compensation standard to determine job connection.

of the Legislature to give the amendments retrospective application.

We also agree with the Appellate Division that it is "eminently clear" that the 1973 revisions govern substantive rights of pensioners and consequently the observations of the Court in *Neel v. Ball,* 6 *N. J.* 546, 551 (1951) concerning statutes relating solely to procedure are inapplicable. See also *Eureka Printing Co. v. Div. of Employment Security,* 21 *N. J.* 383, 392–93 (1956); *cf. In re Tenure Hearing of Grossman,* 127 *N. J. Super.* 13, 35–36 (1974), certif. den. 65 *N. J.* 292 (1974).[13]

Having concluded that the question of entitlement in the appeals before the Court must be determined according to the terms of *N. J. S. A.* 43:10–3 and 4, we proceed to a consideration of the statutory requirement of permanent disability and job connection.[14] As we have in-

---

[13]We are, of course, aware of the approach taken by the court in *Westinghouse Elec. Corp. v. United Elec. Radio & Machine Workers of America,* 139 *N. J. Eq.* 97 (E. & A. 1946) in dealing with the problem of statutory amendments enacted prior to disposition of a case by an appellate court. Despite the court's expansive language, however, it is clear that in concluding that the case should be decided in light of an amendment to the anti-injunction act, the court was influenced by the fact that "the right to an injunction is a right in future." 139 *N. J. Eq.* at 106.

Moreover, in *Borough of Little Ferry v. Bergen County Sewer Authority,* 9 *N. J.* 536 (1952), *cert.* den. 344 *U. S.* 865, 73 S. Ct. 105, 97 L. Ed. 670 (1952) and *Binetti v. Swenson,* 3 *N. J. Super.* 227 (App. Div. 1949), both of which relied upon *Westinghouse Elec. Corp., supra,* the nature of the dispute strongly suggested that the intervening enactments were intended by the Legislature to apply to the situations at issue. No such indication of legislative intent appears in the present act.

[14]*N. J. S. A.* 43:10–3 employs the term "physically unfit for further service" and does not require a work relatedness. See *State v. Deegan, supra,* 126 *N. J. Super.* at 485; *Ursi v. County Employees' Pension Comm'n,* 120 *N. J. L.* 52, 53 (Sup. Ct. 1938). *N. J. S. A.* 43:10–4, however, requires "permanent disability * * * incurred * * * in the service" of the county. See the statutory provisions set forth in full, *supra* at n. 7.

dicated, the respective statutory provisions employ different terminology in describing the physical condition of the applicant before a pension may be granted. In our opinion, however, this difference is not sufficiently substantial to require separate standards of entitlement. Accordingly, we conclude that a common standard governing the condition of the applicant may be applied to both sections.[15] It is still necessary, however, to consider what the standard should be.

In *Meehan v. County Employees' Pension Comm'n,* 135 *N. J. L.* 17 (E. & A. 1946), described in *Ruvoldt* as the "leading case" construing the statute, a penitentiary guard lost his left eye as the result of an injury sustained in the course of his duties. The guard applied for a pension pursuant to *N. J. S. A.* 43:10–4, and, when the Commission denied his request he appealed. The former Supreme Court declined to disturb the Commission's decision, see 134 *N. J. L.* 154 (Sup. Ct. 1946), and the Court of Errors and Appeals affirmed, stating:

The test laid down in the statute is not whether an employee is presently eligible for original appointment or promotion. The sole question is whether the disability suffered permanently incapacitates him from reasonably performing the duties of his position. [135 *N. J. L.* at 18].

In an earlier case, *Simmons v. Policemen's Pension Comm'n,* 111 *N. J. L.* 134 (Sup. Ct. 1933), a policeman who was injured while on duty applied for a pension under a statute requiring a showing of "permanent disability in the performance of duty." 111 *N. J. L.* at 135. The Commission denied the application based upon its finding that the officer was still fit to perform desk duty. On appeal,

---

[15]We do not read the observations of the court in *State v. Deegan, supra,* 126 *N. J. Super.* at 488, as suggesting a contrary conclusion. The court there was concerned with distinguishing the two sections with respect to job connection in quite another context.

the court reversed, emphasizing the difference between the nature of the two positions:

We think the theory of our statute is that a fireman is a fireman, a policeman a policeman, and neither a desk clerk; and that a policeman permanently disabled to do his ordinary duty as such and otherwise within the statute is entitled to invoke it. [111 *N. J. L.* at 136].

More recently, in *Getty v. Prison Officers' Pension Fund,* 85 *N. J. Super.* 383 (App. Div. 1964), the Appellate Division adopted an intermediate test in a dispute involving a statutory requirement of "permanent disability in the performance of his duty." 85 *N. J. Super.* at 388. Plaintiff in *Getty* was an employee of the Department of Institutions and Agencies who was in charge of a soap factory for 15 years. When Getty developed emphysema his physician attributed it to his exposure to caustic fumes and soap dust at the soap factory. Getty ultimately applied for disability benefits, but after an irregular course of proceedings, the Fund denied Getty's request on the basis that the medical testimony did not substantiate Getty's claims of permanent disability or job connection. Although the court remanded the case because it was unclear what evidence was relied upon and what standard was applied to determine permanent disability, the court stated:

[W]e hold that the criterion is whether or not Getty is employable in the general area of his ordinary employment, as distinguished from whether he is generally unemployable or is disabled from performing the specific functions for which he was hired. [85 *N. J. Super.* at 390].

It is apparent that the latter formulation of the standard governing permanent disability is somewhat more restrictive than the *Meehan-Simmons* approach in the sense that under *Getty* the applicant must establish incapacity to perform duties in the general area of his ordinary employment rather than merely showing inability to perform the

specific job for which he was hired. We believe that the *Getty* standard represents a fair accommodation of the competing interests in this context and consequently we adopt it as the appropriate test for establishing disability under *N. J. S. A.* 43:10–3 and 4. We emphasize, however, that the standard we adopt places no requirement upon the applicant to show physical inability to perform substantially different duties or to produce evidence of general physical unemployability provided, however, that employer has work for him in the general area of his employment.

 Finally, we deal with the problem of work connection under *N. J. S. A.* 43:10–4. In those cases in which the trial court affirmed pension terminations on the basis of insufficient evidence of job relation, it relied upon *Russo v. Teachers' Pension & Annuity Fund,* 62 *N. J.* 142 (1973). We have carefully considered the *Russo* opinion and, in our judgment, it was not intended to apply to the statutes in issue. Consequently, we conclude that the trial court's reliance on *Russo* to determine the question of work relation in the present cases was misplaced.

*Russo* involved a claim against the Annuity Fund for accidental death benefits resulting from the death of a custodian who had been employed by the Newark Board of Education. The deceased suffered from a pre-existing heart condition but, despite curtailed duties, he died at work of a heart attack. A hearing officer found for the claimant using the standard governing accidental death under the workmen's compensation statute. The Board of Trustees accepted that test but reversed upon a finding that 'death just happened to occur at his place of employment.'" 62 *N. J.* at 144. The Appellate Division affirmed, and this Court granted certification to consider the propriety of applying a workmen's compensation test of compensability under the controlling statute.

In deciding the issue, we noted that workmen's compensation concepts had frequently been applied in pension cases,

*Getty v. Prison Officers' Pension Fund, supra; Fattore v. Police & Firemen's Retirement System,* 80 *N. J. Super.* 541 (App. Div. 1963), certif. den. 41 *N. J.* 245 (1963); *Kochen v. Consolidated Police & Firemen's Pension Fund Comm'n,* 71 *N. J. Super.* 463 (App. Div. 1962); *Roth v. Bd. of Trustees, Public Employees' Retirement System,* 49 *N. J. Super.* 309 (App. Div. 1958), and that we had reserved the question in *McGee v. Bd. of Trustees of Public Employees' Retirement System,* 45 *N. J.* 576 (1965).[16]

After canvassing the decisions in which compensation principles were applied, however, we noted that in each instance the Legislature responded with amendments to the applicable statutes requiring disability as a direct result of a traumatic event arising out of the employee's assigned duties. See 62 *N. J.* at 149–50. See also *Titman v. Bd. of Trustees of Teachers' Pension & Annuity Fund,* 107 *N. J. Super.* 244, 246 (App. Div. 1969), where the court found that the term traumatic event "is a significant departure from the term 'accident' previously found in the act." Since the disability retirement section of the statute at issue in *Russo* had been amended to require a showing of disability as a direct result of a traumatic event, and the accidental death section had also been amended to require that death be met in the actual performance of duty at some definite time and place,[17] we concluded that workmen's compensation concepts of "accident" should not apply to a pension statute. 62 *N. J.* at 151.

While we continue to adhere to the result in *Russo* in the context of the statutory provisions analyzed therein, we do

---

[16]But see *Wagner v. Bd. of Trustees, Public Employees' Retirement System,* 87 *N. J. Super.* 498 (App. Div. 1965), certif. den. 45 *N. J.* 300 (1965).

[17]See 62 *N. J.* at 153. The prior version of the statute required a showing of death "in active service as a result of an accident arising out of and in the course of his employment and not the result of his willful negligence." *L.* 1966, *c.* 218, § 16.

not believe that it should be applied to the instant statute. We cannot ignore the distinction between the legislative formulation of the work relation standard in the statute before us and the wording of the amendments at issue in *Russo*. In light of the numerous specific legislative responses to this problem in the context of other statutes, we must conclude that the Legislature was satisfied with the standard governing work connection in *N. J. S. A.* 43:10–4. Of course, the formulation of an appropriate standard of work relation in a pension statute is primarily a legislative function. Consequently, if the Legislature is dissatisfied with our interpretation of the instant statute, it is free to amend *N. J. S. A.* 43:10–4, or its successor, *N. J. S. A.* 43:10–5.2 (Supp. 1975–76), in the same way that the statutes discussed in *Russo* were modified. Until the Legislature speaks, however, we hold that it is appropriate to resort to concepts developed under our workmen's compensation statute in resolving issues of work relation under *N. J. S. A.* 43:10–4.

### III

Although the receiver did not submit a cross-petition of certification seeking review of the question and thus it is not properly before the Court, *R.* 2:12–11, in the interests of finality it is appropriate to observe that in our view the receiver's counterclaims for benefits previously paid were properly dismissed. Under all the circumstances disclosed by this record, it would be unduly punitive, unfair and unjust for the receiver to recoup those benefits which in many cases had been paid out over long periods.

### IV

The following five judgments which the Appellate Division remanded to the Chancery Division are affirmed as modified in accordance with the principles set forth herein: *Andrews v. Nolan*, A–112–74; *Wisniewski v. Nolan*, A–112–

 

74; *Wronski v. Nolan*, A–112–74; *Bodson v. Nolan*, A–114–74; *Marchiano v. Nolan*, A–125–74.

All other judgments of the Appellate Division are reversed and all cases are remanded to the Appellate Division with instructions to remand to the trial court in accordance with the principles set forth herein.

*For affirmance, as modified, of five judgments and reversal and remandment of remaining judgments*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.

*Opposed*—None.