JOHN BURNS AND EDNA BURNS, PETITIONERS-APPELLANTS,
v. DIVISION OF PENSIONS, PUBLIC EMPLOYEES' RETIRE-
MENT SYSTEM, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 25, 1980—Decided April 1, 1981.

1

Before Judges BOTTER, KING and McELROY.

*Alan D. Bell* argued the cause for appellants (*Horowitz, Bross & Sinins*, attorneys).

*William Malloy*, Deputy Attorney General, argued the cause for respondent (*John J. Degnan*, Attorney General of New Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel; *Prudence H. Bisbee*, Deputy Attorney General, on the brief).

PER CURIAM.

Petitioners, parents and designated beneficiaries of their daughter's group life insurance policy, appeal from the determination of the Division of Pensions which denied group life insurance death benefits as provided by statute. *N.J.S.A.* 43:15A–41(c) (noncontributory insurance benefit) and *N.J.S.A.* 43:15A–57 (contributory insurance benefit). The facts are not in dispute.

Petitioners' 21-year-old daughter became a permanent county employee on June 9, 1978. By application dated July 12, 1978 she sought enrollment in the Public Employees' Retirement System (PERS), designating her parents as cobeneficiaries of her group life insurance and indicating that she chose to enroll in the retirement system "as of the first day of the month: 4 months after Permanent Appointment." The effective date of her enrollment in PERS and of her insurance coverage would have been November 1, 1978.

However, on October 27, 1978 Muriel made a written request for a six-month leave of absence without pay commencing November 1, 1978 due to personal illness. The leave was approved commencing November 1, 1978. No deductions from salary for pension and insurance purposes were ever made. On November 15, 1978 Muriel was killed in a car accident.

Petitioners, as designated cobeneficiaries, sought payment from the Division of Pensions of life insurance death benefits, both contributory and noncontributory. Benefits were denied on the ground that Muriel "was not actively at work on November 1, 1978 and therefore her membership [in PERS] did not become effective as of that date." Petitioners objected to PERS' denial of the death benefits and asked for a hearing.

The matter was heard by an administrative law judge who denied the claim on the ground that the statutory scheme provides death benefit coverage only for a "member in service," citing *N.J.S.A.* 43:15A–41(c)(1) and (2), and *N.J.S.A.* 43:15A–57(c) and (g). Decedent was not found to be a "member in service" on November 1, 1978. Appellants concede that contributory death benefits under *N.J.S.A.* 43:15A–57 are not payable by the terms of the statute, but contended below and contend here that PERS is estopped from denying coverage on the facts of this case. The claim of estoppel was also rejected below. The board of trustees adopted the findings and conclusion of the

administrative law judge "consistent with" its "original determination" and denied petitioners' request for death benefits. This appeal followed.

*N.J.S.A.* 43:15A–41(c) provides in relevant part that upon the death of "a member in service" (for which accidental death benefits are not payable), the member's beneficiary shall be paid (1) the member's accumulated deductions at the time of death, plus interest, and (2) one and one-half times the compensation upon which "contributions by the member" were based. *N.J. S.A.* 43:15A–57(c) provides for additional death benefit coverage on a contributory payment basis for a member of PERS "from the first day of his membership on which he is actively at work and performing all his regular duties at his customary place of employment." It is this last-quoted language which concededly precludes recovery of the contributory insurance benefits. However, appellants contend that decedent was a "member in service" within the meaning of *N.J.S.A.* 43:15A–41(c) and that the absence from this section of language similar to that contained in *N.J.S.A.* 43:15A–57(c) requiring the actual performance of customary duties means that such a condition does not apply to the noncontributory benefits.

We are not concerned here with a death benefit claim of an employee who has been a member of PERS for some time and dies while on a leave of absence. See *N.J.S.A.* 43:15A–108.[1] What PERS originally held, as we view it, is that because Muriel Burns was not actually working on the date of her enrollment in PERS she was not, therefore, "a member in service" for group life insurance benefit purposes. This view has been incorporated in *N.J.A.C.* 17:2–4.13, which provides:

---

[1]The Attorney General's brief states: "Once coverage is initially effective, continuation of coverage during absences from service is governed for both benefits by *N.J.S.A.* 43:15A–108."

All employees, otherwise eligible, who are not actively employed on the date of their enrollment will not be covered by the group life insurance program until they return to service.

This regulation is consistent with the statutory scheme. The statute contemplates contributions by members and employers to fund the cost of insurance coverage for death benefits. *N.J.S.A.* 43:15A–24(a); *N.J.S.A.* 43:15A–25. *N.J.S.A.* 43:15A–70 provides:

Notwithstanding anything to the contrary, the retirement system shall not be liable for the payment of any pensions or other benefits on account of the employees or pensioners of any employer under this article, for which reserves have not been previously created from funds, contributed by such employer or its employees for such benefits.

Since decedent was on leave without pay on the date her enrollment in PERS was to commence, and she died before going back on the payroll, no death benefits were payable to appellants. Membership in PERS is significant in terms of benefits payable upon retirement, withdrawal from employment or death. These benefits are based upon earnings and are funded through contributions from employees and employers. Since decedent had no earnings on the date her enrollment was to commence and no contributions to PERS were made on her behalf, she did not become a "member" of PERS for any practical purposes on November 1, 1978. When she died while on leave of absence without pay no benefits were payable to appellants.

█ We also sustain the conclusion that PERS was not estopped from denying benefits on the facts of this case. *Skulski v. Nolan*, 68 *N.J.* 179 (1975), on which appellants rely, does not compel the application of estoppel in the case at hand. *Skulski v. Nolan* concerned the right to withdraw pensions that had been granted and paid for some years, producing substantial reliance and changes in position. The extreme circumstances that warranted the application of equitable principles are not present in the case at hand.

Affirmed.