**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4019-19

JOHN MIGNONE,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued January 6, 2022 – Decided January 18, 2022

Before Judges Alvarez and Mawla.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. x-xxxx337.

Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

Robert Kelly, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Donna Arons, Assistant

Attorney General, of counsel; Connor V. Martin, Deputy Attorney General, on the brief).

PER CURIAM

Appellant John Mignone appeals from a May 21, 2020 final agency decision by the Board of Trustees, Public Employees' Retirement System (Board) denying his request for ordinary disability benefits.  We affirm.

Mignone was employed as an auditor by the Division of Taxation for approximately six years.  In 2017, he applied for ordinary disability alleging

> chronic and persistent neuropathic pain resulting from scar tissue from removal of [a] bilateral inguinal hernia mesh.  Local hypoesthesia in the inguinal and upper thigh regions.  Persistent and sever[e] intractable pain spasm and restricted motion in the upper back and all spinal segments and spinal[] revision surgery for removal of inguinal mesh with bilateral ablation of right and left inguinal nerves.

Although filed in March 2017, the application stated an April 2018 retirement date.

The Board denied Mignone's application, he appealed, and the matter was transferred to the Office of Administrative Law.  An administrative law judge (ALJ) conducted a two-day hearing and considered written evidence and testimony from:  Mignone; Robert Holtzin, D.O., a family and emergency

medicine expert and Mignone's physician; and Steven Lomazow, M.D., the Board's neurology expert. The following facts were adduced at the hearing.

Mignone testified he had hernia surgery in April 2005 and returned to work. The hernia mesh inserted in the surgery began causing him pain, requiring a second surgery in July 2006 to remove the mesh. Mignone also experienced pain in his upper back and shoulder areas. Following the second surgery he was prescribed various pain medications, which he claimed affected his ability to work. He also could not sit for long periods of time. Mignone treated with Holtzin, who manipulated his back and referred him to a pain management specialist and neurologist. He also received nerve blocks from Holtzin and other doctors.

Holtzin opined Mignone was totally and permanently disabled. Like Mignone, Holtzin testified regarding Mignone's treatment history, including the recommendation for hernia surgery, the subsequent surgery to remove the mesh, and pain management. Holtzin testified Mignone was treated by a neurologist between November 2016 and February 2017.

A-4019-19

As noted by the ALJ, the neurologist "performed an EMG[1] study, administered a nerve conduction study, and ordered MRIs of Mignone's cervical, thoracic, and lumbar spine." These reports were in evidence. The ALJ noted "[t]he EMG study came back negative . . . . [T]he MRI of Mignone's cervical spine was deemed unremarkable, the MRI of the thoracic spine showed minimal disc herniation, and the MRI of the lumbar spine showed . . . no nerve impingement or entrapment." The ALJ further noted "Holtzin did not review any of the MRI films personally and could not recall whether he performed a neurological evaluation of Mignone in 2016 or 2017."

Lomazow testified he performed a neurological evaluation of Mignone in July 2017 and reviewed certifications from Mignone's treatment providers, including Holtzin. He opined Holtzin lacked the expertise to treat Mignone's pain because only a pain management doctor or neurologist could do so, and the record lacked a certification from such a professional. Lomazow opined Mignone was inadequately treated because the combination of medications

---

[1] "Electromyography (EMG) measures muscle response or electrical activity in response to a nerve's stimulation of the muscle. The test is used to help detect neuromuscular abnormalities." Electromyography (EMG): Neurology and Neurosurgery, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/peripheral_nerve/diagnosis/emg.html (last visited Jan. 4, 2021).

prescribed were of no benefit. He also testified neither Holtzin's diagnosis nor the MRIs explained why Mignone had "total body pain including his neck and . . . back." Lomazow concluded Mignone's body pain and inability to focus on work was caused by the long-term use of the prescribed opiate pain medication. He identified two alternative treatments that were not pursued. As a result, Lomazow concluded he could not opine whether Mignone was permanently disabled because Mignone had not received the necessary medical treatment to achieve maximum medical benefit.

The ALJ found Holtzin "presented credible detailed and sincere testimony regarding his assessment of [Mignone]" but "noted that [Mignone] became disabled in 2018, months after the application for ordinary disability was filed and after [Mignone] was evaluated by . . . Lomazow." The ALJ also noted Holtzin was not an expert in neurology and "no neurologist provided testimony at the hearing" on Mignone's behalf.

The ALJ found Lomazow's testimony more credible than Holtzin's, noting he had conducted a physical examination of Mignone and could find "no objective evidence" to substantiate Mignone's complaints of pain, and Lomazow's opinion was further supported by the MRIs, EMG, and nerve conduction studies, which all showed "normal results." The ALJ credited

A-4019-19

Lomazow's testimony on why he could not opine whether Mignone was totally and permanently disabled. The ALJ found "Holtzin's conclusions and the reasoning underlying those conclusions to be overborne by those offered by . . . Lomazow" and concluded Mignone is not permanently and totally disabled. The Board adopted the ALJ's findings and denied Mignone benefits.

On appeal, Mignone argues the ALJ erred because he did not give greater weight to Holtzin's opinion as the treating physician than Lomazow, who only examined him once. Mignone asserts Lomazow's opinion should be accorded lesser weight because he did not understand Mignone's job duties, and the mental acuity required to perform the job of auditor. Mignone claims the evidence supports a finding of permanent disability.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). We consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which

the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

We do not second-guess or substitute our judgment for the agency's. For these reasons, we do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

Furthermore, we rely upon the ALJ's "acceptance of the credibility of the expert's testimony and the . . . fact-findings based thereon, noting that the [ALJ] is better positioned to evaluate the witness'[s] credibility, qualifications, and the weight to be accorded [to his or] her testimony." In re Guardianship of DMH, 161 N.J. 365, 382 (1999) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)). We have stated "the credibility of the expert and the weight to be accorded his [or her] testimony rest in the domain of the trier of fact." Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961). The trier of fact is free to consider "[t]he testimonial and experiential weaknesses of the witness, such as (1) his status as a general practitioner, testifying as to a specialty, or (2) the fact that his conclusions are based largely on the subjective

7

complaints of the patient or on a cursory examination . . . ." <u>Id.</u> at 86. The expert may be required to substantiate their observations and "the weight to which an expert opinion is entitled can rise no higher than the facts and reasoning upon which that opinion is predicated." <u>State v. Jenewicz</u>, 193 N.J. 440, 466 (2008) (citing <u>Johnson v. Salem Corp.</u>, 97 N.J. 78, 91 (1984)).

We are required to affirm an agency's findings of fact if "supported by adequate, substantial and credible evidence . . . ." <u>Taylor</u>, 158 N.J. at 656-57 (quoting <u>Rova Farms Resort, Inc. v. Invs. Ins. Co.</u>, 65 N.J. 474, 484 (1974)). Moreover, if the evidence supports the agency's decision, we must affirm, even if we would have reached a different result. <u>Clowes v. Terminix Int'l, Inc.</u>, 109 N.J. 575, 588 (1988).

Ordinary disability retirement benefits are granted where a member "is physically or mentally incapacitated for the performance of duty and should be retired." N.J.S.A. 43:15A-42. A member is so incapacitated if he or she is permanently and totally disabled at the time of separation from employment. <u>See</u> <u>Patterson v. Bd. of Trs., State Police Ret. Sys.</u>, 194 N.J. 29, 42 (2008) (interpreting similar language in N.J.S.A. 43:16A–6(1) as requiring total and permanent disability); <u>Bueno v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, Div. of Pensions & Benefits</u>, 404 N.J. Super. 119, 126 (App. Div. 2008)

8

(interpreting similar language in N.J.S.A. 18A:66–39(b) as requiring total and permanent disability); N.J.A.C. 17:2-6.1. To be permanently and totally disabled, the member must be unable to perform duties in the "general area of his [or her] ordinary employment . . . ." Skulski v. Nolan, 68 N.J. 179, 206 (1975). It is insufficient if the member is merely unable to perform his or her specific job. Ibid. See also Bueno, 404 N.J. Super. at 131.

The burden of proof is on the party seeking benefits. See Patterson, 194 N.J. at 50-51. To carry this burden, the member must provide expert testimony. Bueno, 404 N.J. Super. at 126.

Applying our highly deferential standard of review, we conclude the record amply supports the Board's decision Mignone failed to show he qualified for ordinary disability benefits pursuant to N.J.S.A. 43:15A-42. The findings of fact and credibility assessments of the experts, as adopted by the Board, are based on sufficient credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9                                                                    A-4019-19