85 N.J. Super. 383 (1964)
204 A.2d 883
PHILIP V.B. GETTY, APPELLANT,
v.
PRISON OFFICERS' PENSION FUND, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1964.
Decided November 16, 1964.
*384 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Lee A. Holley argued the cause for appellant (Messrs. Holley & Kroner, attorneys).
Mr. Howard H. Kestin argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
*385 The opinion of the court was delivered by FOLEY, J.A.D.
The Prison Officers' Pension Fund, State of New Jersey (Fund), denied appellant's application for retirement under N.J.S.A. 43:7-12, and he appeals.
Getty, an employee of the Department of Institutions and Agencies, was in charge of a soap factory in Bordentown Reformatory from 1943 to 1958. On July 9, 1958 his physician, Dr. Robert B. Wever, found him to be suffering from emphysema, which the doctor attributed to caustic fumes and industrial soap dust to which Getty had been exposed, and which he inhaled, during the 15 years in which he had been employed in the soap factory.
On July 11, 1958, on the recommendation of his physician, Getty applied for and was granted a three months' leave of absence. In November 1958 he notified his superiors that he was undergoing further physical examinations and requested an additional three months' leave of absence. The request was denied. Getty did not return to work and, on December 8, 1958, the Department "involuntarily resigned" Getty from his position, effective as of December 3, 1958, for having been absent without permission in excess of five consecutive days, in violation of Civil Service Rule 60. Getty appealed to the Department of Civil Service which, on March 23, 1960, reversed the involuntary resignation, but ordered:
"Appellant must decide whether he intends to resume his old position or take any other job offered in the state service, or he must face a consequence of being resigned for continued ill health."
Before the Department of Civil Service announced its decision, the State attempted to find another position for Getty at a comparable salary where he would not be subjected to deleterious dust and vapors. No suitable position was available then, or after the decision. On April 29, 1960 Dr. Wever ordered Getty "never [to] subject himself to these toxic chemicals again." On June 27, 1960 the Bordentown Reformatory informed Getty that his employment was terminated, and after an exchange of correspondence the Department advised *386 Getty on August 2, 1960 that no substitute position was available and that he was considered to have resigned voluntarily for the medical reasons expressed in Dr. Wever's letter of April 29, 1960. Getty received this advice on August 4 and immediately wrote to the Department that he had not resigned, and demanded a hearing. On September 14, 1960 he was advised by the Department that his employment was terminated for the reasons previously stated and that he would be denied a hearing.
On November 15, 1960 Getty filed an "Application for service disability retirements," which he supplemented on April 3, 1961. According to Getty's brief, the Fund "tabled the application July 24, 1961, pending an opinion from the Attorney General." The application lay dormant until Getty's attorney wrote the Fund on January 3, 1962. We are unable to find in the record or in the briefs of the parties any explanation of the inordinate delay in the processing of Getty's application for service disability retirement, and we pause to state our disapproval of such delay.
The Fund had Getty examined by Dr. Carabelli on March 27, 1962. Dr. Carabelli reported a diagnosis of (1) emphysema, pulmonary, moderately severe, (2) history of asthma, bronchial, (3) history of hay fever, fall type, and (4) an old, healed fracture of the second rib, left side. He was of the opinion that the emphysema was caused by the asthma and was not related to or aggravated by Getty's work in the soap factory. Dr. Carabelli's report was submitted to the Fund's medical review board which, on May 11, 1962, rendered an opinion "that the applicant not be recommended for Disability Retirement." Notwithstanding the opinions of Dr. Carabelli and the medical review board, the Fund had Getty examined by Dr. Werner J. Hollendonner on June 18, 1962. Dr. Hollendonner reported that he found no emphysema and no objective evidence of respiratory or cardiovascular impairment; that Getty was afflicted by a typical hay fever syndrome, probably due to rag weed; and that he did not "feel that there was any likelihood that working in the soap factory *387 actually caused the disease." However, he said that the symptoms of this ailment can be provoked or aggravated by exposure to a dusty environment, and he recommended that Getty avoid exposure to any dusty atmosphere in the future.
On September 27, in total disregard of N.J.S.A. 43:7-12 and without a hearing, the Fund informed Getty's attorney that the application for pension had been denied "on the basis of causality, permanency and totality."
On October 10 the attorney wrote a letter to the Fund "as a formal notice of appeal," demanding a hearing. In the letter he made no reference to the procedural requirements of the statute. The Fund acceded to this demand and a hearing was held beginning December 13, 1962. Meanwhile, presumably at the request of the Fund, the medical review board had met on November 30 and December 7 (again without seeing petitioner or his doctors, and without giving them an opportunity to be heard), and unanimously recommended to the Fund "that the above named applicant not be recommended for disability retirement. Dr. Carabelli and Dr. Hollendonner agree in the opinion that the patient suffers from a seasonal allergy and both agree they do not feel that it was caused by his occupation."
The members of the medical review board did not testify at the hearing, but Dr. Carabelli and Dr. Hollendonner did. In the light of N.J.S.A. 43:7-12 we question the propriety of the Fund's reliance upon the ex parte report and recommendation of the medical review board. In addition to the testimony of Dr. Carabelli and Dr. Hollendonner, the Fund received at the hearing the testimony of Dr. Wever and Dr. Pickert, an allergist, in behalf of the applicant.
In its findings of fact the Fund concluded that the medical testimony did not support the contention that Getty's physical condition was that of "a permanently disabled person" and that, regardless of the extent of his disability, it was not "received in the performance of his duties."
*388 N.J.S.A. 43:7-12 provides:
"Any such prison officer who shall have received permanent disability in the performance of his duty, shall, upon the certificate of a physician designated for that purpose by the pension commission, be retired on a pension equal to one-half of his salary at the time of his retirement. Where, however, any such prison officer shall desire to retire by reason of injury or disease, such prison officer shall make application in writing to the pension commission for such retirement; whereupon the pension commission shall call to their assistance the aid of a regularly licensed and practicing surgeon or physician, and the person making the application may likewise call to his aid a regularly licensed and practicing surgeon or physician. The president of the pension commission is authorized to administer oaths to said surgeons, physicians, or other persons called in respect to the matter before the commission. The commission shall determine, by resolution, whether said person is entitled to the benefits of this act. In the event that the two surgeons, or physicians so called as hereinbefore provided, fail to agree upon the physical condition of the applicant, then the pension commission may call a third and disinterested licensed and practicing surgeon or physician and the determination of the majority of said three surgeons or physicians, who shall be first duly sworn, shall be reduced to writing and signed by them, and the pension commission shall consider same in reaching their decision."
As we have already stated, it is clear that the Fund did not follow the legislative pattern for resolution of a disputed application for a pension. In Wagner v. County Employees Pension Comm., 130 N.J.L. 230, 234 (E. & A. 1943), the court, in construing a comparable pension statute, said:
"We need hardly labor the point that there is nothing in the context of the statute to indicate that the legislature intended that a county employee should have his application for retirement on pension determined contrary to its legislative pattern."
We find this statement to be fully applicable here.
However, since Getty acquiesced in it, we could accept the hearing as a sufficient compliance with the statute if the findings of fact by the Fund were sufficiently explicit to enable us to determine upon what testimony the Fund relied in concluding that Getty's physical condition was not that of a "permanently disabled person," and that whatever his disability, it was not "received in the performance of his duties." *389 Compare Bingham v. Dept. of Civil Service, 77 N.J. Super. 459 (App. Div. 1962), affirmed 40 N.J. 330 (1963). But the findings lack the necessary specificity. They are:
"(1) Philip V.B. Getty was a member of the Prison Officers' Pension Fund and he filed an application for a service connected disability retirement (2 part form) on November 15, 1960 and April 3, 1961.
(2) At the time of filing his application Mr. Getty was no longer an employee of the State of New Jersey, his services having terminated May 6, 1960 at the behest of the institutional authorities (see Civil Service records).
(3) Mr. Getty not having 20 years of service required for a routine retirement; therefore, applied for service connected disability retirement.
(4) Mr. Getty's present condition which is advanced as a basis for his application for service connected disability was never preceded by any extended absence from his work due to illness until July 9, 1958 when Dr. Wever recommended a three month leave of absence. It was not until April 29, 1960 that Dr. Wever stated he should never again subject himself to the toxic chemicals present in his job at Bordentown.
(5) Dr. Pickert states in his letter 12/11/62 that it is not susceptible of direct proof that the occupational exposure laid the ground work for the development of allergy.
(6) Dr. Carabelli 3/27/62 states `I do not feel under the circumstances and history that his emphysema (caused by asthma) is related to or aggravated by his work in the Soap Shop.'
(7) Dr. Hollendonner 6/19/62, examination 6/18/62: `I do not feel that there is any likelihood that working in the soap factory actually caused Mr. Getty's disease. Certainly he should avoid exposure to any dusty atmosphere in the future. Mr. Getty has no objective evidence of any chronic respiratory or cardiovascular impairment.'
(8) Medical testimony does not support the contention that Mr. Getty's present physical condition is that of a permanently disabled person and that, regardless of the extent of his disability, it was not received in the performance of his duty."
The difficulty engendered by the recital is that we cannot tell what ailment, if any, the Fund found that Getty was suffering from. As we have pointed out, Dr. Carabelli said he was suffering from asthma and emphysema, while Dr. Hollendonner said he was not. Moreover, if he was suffering from some ailment, we do not know what standard the Fund applied in determining that Getty was not permanently disabled. *390 In this connection we hold that the criterion is whether or not Getty is employable in the general area of his ordinary employment, as distinguished from whether he is generally unemployable or is disabled from performing the specific function for which he was hired. Cf. Simmons v. Policemen's Pension Comm. of Borough of Deal, 111 N.J.L. 134, 136 (Sup. Ct. 1933).
It is also our opinion that a disability received "in the performance of his duty" includes such disability as results from an aggravation of a pre-existing physical condition by the work conditions under which a claimant is obliged to perform his duties. We think also that the rationale of the rule laid down in Dwyer v. Ford Motor Company, 36 N.J. 487, 493 (1962), that it is necessary for a workmen's compensation claimant to show by a preponderance of the evidence only that the ordinary work effort or strain in reasonable probability contributed in some material degree to the precipitation, aggravation or acceleration of existing disease, is applicable here.
We therefore remand the case and direct that Getty's application be processed anew in accordance with N.J.S.A. 43:7-12. In order to avoid any suggestion that the Fund prejudged claimant's case on the basis of the reports and testimony of Dr. Carabelli and Dr. Hollendonner, supplemented by the views of the medical review board, and that consequently the hearing to be accorded Getty will be an empty gesture, we direct that the physicians chosen to act pursuant to N.J.S.A. 43:7-12, supra, be physicians other than those who have been previously connected with the case.
Remand. We do not retain jurisdiction. No costs.