NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0799-15T2

MARIA GRIECO-HICKS,

 Petitioner-Appellant,

v.

BOARD OF TRUSTEES, TEACHERS'
PENSION AND ANNUITY FUND,

 Respondent-Respondent.
___________________________________

 Argued December 6, 2016 – Decided May 11, 2017

 Before Judges Fisher and Ostrer.

 On appeal from the Teachers' Pension and
 Annuity Fund, Department of the Treasury,
 Docket No. 1-487853.

 Samuel M. Gaylord argued the cause for
 appellant (Gaylord Popp, LLC, attorneys; Tanya
 L. Phillips, on the briefs).

 Amy Chung, Deputy Attorney General, argued the
 cause for respondent (Christopher S. Porrino,
 Attorney General, attorney; Melissa H. Raksa,
 Assistant Attorney General, of counsel; Ms.
 Chung, on the brief).

PER CURIAM

 Petitioner Maria Grieco-Hicks appeals from the September 10,

2015 final decision of the Teachers' Pension and Annuity Fund
Board of Trustees (the Board), denying her application for

accidental disability retirement benefits. The Board adopted the

initial decision of the Administrative Law Judge (ALJ). He found

that petitioner failed to meet her burden to show she was

permanently and totally disabled, and her alleged disability was

directly caused by a traumatic event at work. Petitioner

challenges both findings on appeal. Because we reject petitioner's

argument on the former, we need not reach the latter, and,

therefore, affirm.

 I.

 Petitioner's claim arises out of a workplace accident on

September 3, 2010. Petitioner had been an art teacher for fourteen

years at Trenton Central High School. She was fifty-seven years

old. While standing on a step-stool to place art equipment on a

shelf, she misstepped and fell. She struck an old printing press

and her right foot was tucked under her buttocks as she hit the

floor. The awkward fall injured her knee. Despite experiencing

pain, she continued to work while under treatment until October

21, 2010. At that point, a physician reviewed an MRI performed

on October 6, 2010, which had revealed bone bruises and multiple

tears of meniscuses and ligaments including the anterior cruciate

ligament (ACL). The physician immediately advised her not to

return to school.

 2 A-0799-15T2
 After leaving work, petitioner received treatment from a

variety of specialists over a year and a half, which improved her

knee condition — albeit not to full strength. She underwent knee

surgery in March 2011 to remove the torn meniscuses and reconstruct

her ACL by grafting a ligament from a cadaver. She followed up

with physical therapy and received nerve blocks from a pain

management specialist. MRIs in September 2011 and in April 2012

showed bowing and partial tearing of the ACL graft.

 By late 2011, she continued to complain of pain. She began

seeing a workers' compensation orthopedist, Steven R. Gecha, M.D.

Dr. Gecha discharged her in March 2012, concluding she had reached

her maximum level of medical improvement. His report acknowledged

that petitioner declined to pursue a second surgery that Dr. Gecha

explained had a fifty percent chance of improving her symptoms.

 Dr. Gecha stated that, even though she was discharged,

petitioner was restricted from standing and walking for extended

periods of time. However, she had "[n]o limit to sitting . . . ."1

In prior reports, he suggested "sedentary work only with only a

1 The restrictions included: "[m]aximum 2 hours a day of standing
and walking. Less than 1 hour a day of driving. . . . No twisting
to transfer objects, squatting below chair levels, climbing
ladders or cat walks, climbing more than 1 flight of stairs,
lifting or carrying greater than 20 pounds, kneeling."

 3 A-0799-15T2
limited amount of total standing and walking . . . . No limit to

sitting . . . ."

 Petitioner applied for accidental disability retirement

benefits in July 2012. After the Board initially denied her

application, the matter was referred to the Office of

Administrative Law for a contested hearing, which was held in

April 2015. The witnesses included petitioner and two experts:

Arthur Becan, M.D., who testified on petitioner's behalf, and

Jeffrey F. Lakin, M.D., whom the Board retained.

 Petitioner testified that she continued to experience daily

pain, swelling, and instability in her knee. Her knee hurt when

she walked, it was difficult to navigate steps, and she had trouble

sleeping through the night. She testified that she could no longer

work as an art teacher at Trenton Central High School. She

contended that the job entailed a lot of walking, standing, stair-

climbing, and carrying various supplies. She acknowledged,

however, the building was handicap accessible and an elevator was

available to persons provided a key to it. Moreover, petitioner's

formal job description did not explicitly identify physical tasks

of the position.2

2 Plaintiff's job description identified the following
"performance responsibilities":

 4 A-0799-15T2
 Based upon his August 2013 examination of petitioner and a

review of her records, Dr. Becan opined that petitioner was totally

and permanently disabled. He reviewed her various tears, operation

and treatments, and concluded she was left with severe progressive

arthropathy3 of the right knee. He further opined that she had an

"unstable arthritic knee" that caused buckling, which contributed

 1. Plans in written form and executes in
 practice a program of study that meets the
 individual needs, abilities, and interests of
 all students assigned.

 2. Creates a classroom environment that is
 conducive to learning and appropriate to the
 . . . interest of the student.

 3. Guides the learning process toward the
 achievement of curriculum goals[,] . . .
 establishes clear objectives for all les[s]ons
 . . . [and] communicate[s] these objectives to
 students.

 4. Strive[s] to implement by instruction and
 action the District's philosophy of education
 and instructional goals and objectives.

 5. Assists in the selection of books . . . and
 other instructional materials.

 6. Establishes and maintains cooperative
 relations with others.

 7. Perform[s] such tasks and assumes such
 responsibilities as directed by the
 principal[.]

3 "Arthropathy" is defined as, "[a]ny disease affecting a joint."
Stedman's Medical Dictionary 161 (28th ed. 2006).

 5 A-0799-15T2
to the knee's continued atrophy. He testified that petitioner

tore her ACL again after surgery, but did not identify the cause.

He opined that she "no longer can perform prolonged walking,

prolonged standing, prolonged sitting. She is unable to climb

stairs, squat, kneel or crawl, and all of these are activities

that were required as her occupation as an art teacher." Dr.

Becan opined that petitioner would likely need a total knee

replacement.

 Dr. Lakin disagreed with Dr. Becan's conclusion. He conducted

a December 2012 examination and records review. According to Dr.

Lakin, petitioner complained her knee would give out once a month,

but "her main complaints . . . were just sensitivity . . . along

the incision." She told him she was able to navigate stairs and

walk without a brace or other aids. He opined that petitioner's

knee was stable and had excellent motion. He found no evidence

of arthropathy. He minimized the significance of the tearing of

the ACL graft, which he said was intact. He concluded that

petitioner was not totally and permanently disabled from the normal

activities of her job as a result of the accident.

 The ALJ credited petitioner's complaints of instability,

numbness, tingling, her daily pain and swelling, difficulty

sleeping, going up and down steps, and her inability to stand for

more than ten minutes. However, he rejected her claim that these

 6 A-0799-15T2
complaints rendered her unable to perform her essential job duties.

The ALJ reasoned:

 [P]etitioner's case comes down to her
 assertion that she is totally and permanently
 disabled because she is no longer able to
 perform prolonged walking, prolonged standing
 and prolonged sitting. She also maintains
 that she is unable to climb stairs, squat,
 kneel, or crawl, and that these are all
 activities necessary in the petitioner's
 occupation as an art teacher.

 Several factors militate against
 petitioner's position. First, aside from
 petitioner's own testimony, nothing in the
 record tends to show that she was required to
 walk, stand or sit for prolonged periods of
 time. Nor is there any suggestion that
 petitioner was required to squat, kneel or
 crawl. The only activity that Dr. Becan
 suggests petitioner cannot do that is in the
 record as required is climbing steps.
 However, petitioner agreed that her school had
 an elevator, but that it required a key that
 she did not have. There is no evidence that
 petitioner could not get such a key, nor has
 petitioner produced any evidence that the
 Trenton school district would not move her to
 a classroom that did not require steps to
 access her classroom, such as a classroom on
 the first floor. Petitioner did not offer
 proof that she would be incapable of
 performing her job if using some form of
 assistance, such as a cane or wheelchair.
 Further, petitioner admitted that ramps had
 been installed at her school. Simply put, I
 find it unlikely that the administration of
 the Trenton school district would require a
 teacher to use stairs if she could not do so,
 and that the Trenton school district would
 terminate her from her employment if she could
 not do so. Petitioner offered no such proof

 7 A-0799-15T2
 that she would have been terminated for an
 inability to use stairs.

 The testimony of the experts evinces
 little dispute over petitioner's ability to
 return to work. Dr. Lakin testified that she
 was not totally and permanently disabled and
 could return to work. Dr. Becan is of the
 opinion that petitioner cannot do physical
 actions that are not even required in
 petitioner's job description.

 The ALJ also found that petitioner was not totally disabled

in her knee, noting that even Dr. Becan found that petitioner had

100 degrees of flexion, no atrophy in her right leg, and only a

"mild loss" of strength.

 Turning to the issue of causation, the ALJ found both experts

credible, but Dr. Lakin's opinion more persuasive. "Dr. Lakin

explained that if a traumatic injury were causing her arthritis,"

she would be experiencing symptoms that she had not described.

Instead, "the MRIs only showed typical age-related arthritis.

Further, there was no degeneration." The ALJ concluded that

petitioner failed to prove that her fall "was the direct cause of

her right-knee issues."

 The Board subsequently adopted the ALJ's initial decision and

denied petitioner's application for accidental disability

retirement benefits.

 8 A-0799-15T2
 II.

 We exercise a narrow scope of review of the Board's decision.

We will sustain the Board's decision "unless there is a clear

showing that it is arbitrary, capricious, or unreasonable, or that

it lacks fair support in the record." Russo v. Bd. of Trs., Police

& Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (internal quotation

marks and citation omitted). However, we are not bound by the

agency's statutory interpretation or other legal determinations.

Ibid.

 In order to qualify for accidental disability retirement

benefits, petitioner was required to demonstrate she was

"permanently and totally disabled as a direct result of a traumatic

event occurring during and as a result of the performance of [her]

regular or assigned duties." N.J.S.A. 18A:66-39(c). See also

Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J.

189, 194-95 (2007) (setting forth elements of a claim for

accidental disability retirement benefits in a parallel statute).

The principal issue is whether petitioner was "permanently and

totally disabled" from performing her normal duties. Petitioner

bears the burden of proof. Bueno v. Bd. of Trs., Teachers' Pension

& Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008), certif.

denied, 199 N.J. 540 (2009).

 9 A-0799-15T2
 To determine whether a person is "permanently and totally

disabled," the Supreme Court adopted the standard set forth in

Getty v. Prison Officers' Pension Fund, 85 N.J. Super. 383 (App.

Div. 1964), that is, "the criterion is whether or not [the

petitioner] is employable in the general area of his ordinary

employment . . . ." Skulski v. Nolan, 68 N.J. 179, 205-06 (1975)

(quoting Getty, supra, 85 N.J. Super. at 390). The Getty court

rejected tests at either of two extremes: one requiring that the

petitioner be "generally unemployable" and the other requiring

that the petitioner be "disabled from performing the specific

functions for which he was hired."4 Getty, supra, 85 N.J. Super.

at 390 (emphasis added). In adopting the Getty standard, the

Skulski Court emphasized that its standard "places no requirement

upon the applicant to show physical inability to perform

4 These two extremes relate to two prior cases described in
Skulski, supra, 68 N.J. at 204-05. The Court of Errors and Appeals
in Meehan v. Cnty. Employees' Pension Comm'n, 135 N.J.L. 17 (E. &
A. 1946), affirmed the denial of a pension to a prison guard who
lost his left eye as a result of a workplace injury, stating, "The
sole question is whether the disability suffered permanently
incapacitates him from reasonably performing the duties of his
position." Id. at 18. By contrast, the old Supreme Court, in
Simmons v. Policemen's Pension Comm'n, 111 N.J.L. 134, 135-36
(Sup. Ct. 1933), rejected the finding that a police officer was
not permanently disabled because he was still fit for desk duty,
stating "a fireman is a fireman, a policeman a policeman, and
neither a desk clerk"; rather, the petitioner was permanently
disabled if unable to perform "the ordinary everyday duties of a
policeman."

 10 A-0799-15T2
substantially different duties or to produce evidence of general

physical unemployability provided, however, that employer has work

for him in the general area of his employment." Skulski, supra,

68 N.J. at 206.

 We applied this test in Bueno, which involved a claim for

ordinary disability retirement benefits. Bueno, supra, 404 N.J.

Super. at 122. We did so notwithstanding that the petitioner was

required to show she was "physically or mentally incapacitated for

the performance of duty," N.J.S.A. 18A:66-39(b), as opposed to

showing she was "permanently and totaled disabled", N.J.S.A.

18A:66-39(c), which is required for accidental disability

retirement benefits. In Bueno, an experienced teacher suffered

from adjustment and anxiety disorders as a result of the manner

in which she was supervised and other conditions at a New Brunswick

school where she had worked for the last few years. Bueno, supra,

404 N.J. Super. at 123-24. The Board concluded that Bueno was

capable of teaching in a different school, in a more supportive

environment. Id. at 124. Applying Skulski, we affirmed the denial

of benefits to Bueno because she "failed to even prove that she

was disabled from teaching for other employers." Id. at 131.

 Applying Skulski and Bueno to this case, we discern no error

in the Board's decision. The evidence demonstrates that petitioner

was "employable in the general area of [her] ordinary employment,"

 11 A-0799-15T2
Skulski, supra, 68 N.J. at 205-06. She failed to show that she

was unable to teach high school art, even if she could not teach

it in precisely the same manner she had before her injury. As the

ALJ noted, her school was handicap accessible and had an elevator.

Accordingly, for example, she did not need to climb multiple

flights of stairs.

 Dr. Gecha, whose opinions petitioner cites on appeal,

concluded that petitioner had no limitations on sitting, so long

as she rose to stretch periodically.5 Crediting petitioner's

complaints of pain, she could still stand for brief periods of

time. As the ALJ observed, petitioner "did not offer proof that

she would be incapable of performing her job if using some form

of assistance, as a cane or wheelchair." There was no evidence

that even if she used a wheelchair, she would be unable to move

about a classroom to guide and teach art students, particularly

if reasonable accommodations to classroom layout were made.

 Furthermore, the Trenton Board of Education, as well as any

other public school employer, would have been obliged to make

reasonable accommodations for petitioner's limitations to the

5 We recognize that Dr. Becan stated that petitioner could not sit
for prolonged periods of time. However, petitioner did not make
that claim in her testimony, and Dr. Gecha stated she had no
limitations on sitting. We presume that Dr. Becan meant only,
consistent with Dr. Gecha, that petitioner would need periodically
to rise to stretch.

 12 A-0799-15T2
extent they were not already provided. See 42 U.S.C. §

12112(b)(5)(A) (defining "discriminat[ion] against a qualified

individual on the basis of disability" to include "not making

reasonable accommodations to the known physical . . . limitations

of an otherwise qualified individual with a disability who is an

. . . employee" (internal quotation marks omitted)).

 Inasmuch as we affirm the Board's decision that petitioner

did not prove that she was totally and permanently disabled, we

need not reach the Board's determination that petitioner failed

to prove causation.

 Affirmed.

 13 A-0799-15T2