**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2999-18T3

SHIRLEY YOUNG,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

      Respondent-Respondent.

_____

Argued February 11, 2020 – Decided March 10, 2020

Before Judges Currier and Firko.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Frank Salvatore Gaudio argued the cause for appellant (Miller & Gaudio, PC, attorneys; Frank Salvatore Gaudio, on the briefs).

Porter Ross Strickler, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Porter Ross Strickler, on the brief).

PER CURIAM

Shirley Young appeals from the Board of Trustees of the Teachers' Pension and Annuity Fund (Board) denial of her application for accidental disability retirement benefits. The Board rejected appellant's application for accidental disability retirement benefits and ordinary disability retirement benefits after it adopted, without further comment, the findings and conclusions reached by an Administrative Law Judge (ALJ). We affirm the Board's decision.

I.

Appellant was employed as an elementary school teacher beginning in 1992. On March 23, 2009, she slipped on urine on a school stairwell and fell down six steps, striking her head on the floor and railings. Appellant testified she thought there was a brief period of unconsciousness. She was evaluated at an emergency room later that day. X-rays were taken of her lumbar spine and right knee which were negative for fracture. A CT[1] scan of her head was suspicious for contusion. Appellant was released from the hospital that day. Prior to the accident, appellant's medical history was significant for monthly

---

[1] Computed Tomography.

hormonal headaches, colitis, Crohn's disease, depression, anxiety, and alcoholism.

On March 25, 2009, Dr. Roy Mittman, an orthopedic surgeon, diagnosed appellant with a right knee meniscal tear and contusion. On March 30, 2009, Dr. Haralambos Demetriades, also an orthopedic surgeon, diagnosed her with lumbar strain, degenerative disc disease, displacement of a lumbar intervertebral disc, and the knee conditions noted above, for which Naprosyn was prescribed.

On March 31, 2009, appellant was evaluated by Dr. James A.B. Drury, her treating psychiatrist for the previous two-and-a-half years. Before the incident, Dr. Drury diagnosed appellant with bipolar disorder and alcohol dependency. He prescribed Xanax, Paxil, Lamictal, and Celexa. Appellant recalled taking these medications before the incident.

Also, on March 31, 2009, appellant was evaluated by Dr. Alan Colicchio, a neurologist, for her headaches. He requested an MRI[2] of the brain and an electroencephalogram (EEG).[3] The EEG was conducted on April 8, 2009, and

---

[2] Magnetic Resonance Imaging.

[3] An EEG is a test that detects abnormalities in the brain waves, or in the electrical activity of the brain. During the procedure, electrodes consisting of small metal discs with thin wires are pasted onto the scalp. The electrodes detect

showed seizure activity.  The EEG was repeated on April 27, 2009, and revealed similar abnormalities.

On May 7, 2009, Dr. Mittman performed a right knee arthroscopy on appellant.  Her knee became septic, requiring a hospitalization on May 19, 2009 and a debridement procedure.  Thereafter, on June 9, 2009, appellant began treatment with Dr. Peter Barcas, a neurologist, who treated her headaches with an anti-depressant medication.

Appellant was examined by a psychologist, Dr. Jay Gordon, on June 18, 2009, who diagnosed her with post-concussive syndrome, adjustment disorder, and anxious and depressive mood.  He recommended psychotherapy, cognitive rehabilitation, and biofeedback.  In July 2009, appellant underwent a neuropsychological evaluation.  She scored average on verbal reasoning scores and below-average on executive functioning and memory.  Personality testing suggested appellant exaggerated her symptoms, and Dr. Gordon concluded her inconsistent testing efforts underestimated her actual abilities.  On August 21, 2009, Dr. Barcas noted appellant was stable and cleared her to return to work.

---

tiny electrical charges that result from the activity of brain cells. Electroencephalogram (EEG), Johns Hopkins Medicine, https://www.hopkins medicine.org/health/treatment-tests-and-therapies/electroencephalogram-eeg (last visited February 25, 2020).

A-2999-18T3

Appellant returned to work full-time in October 2009 for about a month. Dr. Gordon noted she made "significant progress" but she complained of forgetfulness and fatigue. Appellant claimed she could not keep up with her tasks and Dr. Barcas authorized her to be out of work for two months. In Spring 2010, appellant returned to work for four weeks but complained of forgetfulness, loss of concentration, and problems transposing letters and numbers. Appellant also claimed she was constantly late for class, misdiaried events, filed reports late, and forgot which students were hers, resulting in her resignation. A follow-up CT scan of appellant's head was performed on August 31, 2010, and was reported as normal.

On October 26, 2010, appellant applied for accidental disability retirement benefits claiming she was disabled by a head injury, post-traumatic stress disorder (PTSD), headaches, cognitive impairment, depression, memory problems, a meniscus tear in her right knee, cervical and lumbar disc injuries. Appellant's application was denied because the Board found she was "not considered totally and permanently disabled from the performance of [her] regular and assigned duties[,]" and "there [was] no evidence in the record of direct causation of a total and permanent disability."

On November 15, 2010, appellant was evaluated by Dr. Barry Edison, an ophthalmologist, because of her complaints of eye pain, double and blurry vision. There were no findings made relative to her complaint of eye pain.

On February 15, 2011, Dr. Joshua Mendelson, a neurologist, evaluated appellant for her migraine headaches and prescribed medications. Dr. Mendelson did not opine that appellant was permanently and totally disabled.

Sometime in February 2011, appellant reported that her right knee buckled while in her kitchen at her home, resulting in a swollen right knee and fractured ribs, for which she followed up with Dr. Aron Green, an orthopedic surgeon. On March 24, 2011, appellant was evaluated by Dr. Steven Dyckman, a psychiatrist, who diagnosed her with panic disorder, and prescribed Effexor. On August 4, 2011, appellant was evaluated by Dr. Francis Bernard Ponce, a neurologist, who prescribed Botox injections to treat her migraine headaches, which was continued when he examined her again on January 26, 2017. On August 29, 2011, appellant was evaluated by Dr. Peter Harris, a psychiatrist, who diagnosed her with post-concussive syndrome and adjustment disorder with mixed emotional features.

On September 8, 2011, the Board reconsidered and denied appellant's application for the same reasons. On March 1, 2012, upon appellant's request,

A-2999-18T3

the Board reconsidered her application a second time and denied it. She appealed the Board's determination to the OAL as a contested case on March 2, 2012.

Appellant was admitted to the Carrier Clinic on March 20, 2012 due to severe depression, and was discharged eight days later. Thereafter, appellant underwent ongoing psychiatric treatment and psychotherapy. On June 8, 2016, appellant underwent surgery for cervical stenosis and degenerative disc disease of the cervical spine.

After several ALJs retired, the matter was assigned to ALJ Dean J. Buono on January 20, 2017, who heard testimony from appellant and her expert medical witness, Anca Bereanu, M.D. In June 2018, the case was re-assigned to ALJ David M. Fritch. ALJ Fritch reviewed the trial transcripts from the previous proceedings, and heard additional testimony from appellant, her fiancé, and respondent's medical expert witness, Mark J. Chelder, Ph.D.

Appellant testified that she suffers from migraine headaches three times per week, short-term memory loss, which affects her ability to read, impaired mobility in her neck, worsened anxiety and depression, insomnia, and knee pain.

Dr. Bereanu, who was qualified as an expert in the fields of neurology and psychology, testified that she physically examined appellant in April 2015. In

addition, Dr. Bereanu took appellant's medical history and reviewed her medical records before and after April 2015. Dr. Bereanu diagnosed appellant with a closed head injury, post-concussive syndrome, post-traumatic left temporal seizures, right knee tunnel derangement, which required surgery, followed by a secondary infection, contusion to the lumbosacral spine, and mild reactive depression aggravated by mild cognitive defects. Appellant's expert testified that the CT of the head and brain showed some swelling affecting the left frontal lobe, and a repeat EEG performed in April 2009 revealed seizure activity. Dr. Bereanu noted appellant had no prior knee or spine surgeries.

On behalf of the Board, the ALJ heard testimony from Dr. Chelder, who was qualified as an expert in the field of psychology. Dr. Chelder conducted an independent medical examination on March 22, 2017. As part of his examination, Dr. Chelder reviewed appellant's medical history and medical records. He administered a Personality Assessment Inventory (PAI) test and opined appellant may not have answered in a forthright manner, and indicated a level of defensiveness and a tendency toward symptom exaggeration.

According to Dr. Chelder, appellant's current personality assessment did not indicate significant psychopathology, and she had a pre-injury baseline of psychological issues, including depression and anxiety. Dr. Chelder concluded

A-2999-18T3

that there was insufficient evidence to find appellant totally and permanently disabled, and her pre-existing anxiety and depression were the underlying cause of her reported symptomology.

After considering the testimony, the ALJ found that:

> [Appellant's] complaints are generally subjective and not subject to verification by objective means. Her disability claim relies entirely on her self-reported cognitive defects and complaints of migraine headaches following the incident. While [appellant] underwent a variety of tests to measure her cognitive abilities, none of these tests had a baseline to compare [appellant]'s performance post-incident with her abilities before the incident, making it impossible to know with surety what incremental level of cognitive impairment [appellant] suffers from post-incident beyond relying on [appellant]'s own subjective reporting.
>
> [(Footnote omitted).]

The Board adopted the ALJ's decision and denied appellant's application for accidental disability retirement benefits and ordinary disability benefits. On appeal, appellant argues the Board erred in finding that she was not totally and permanently disabled as a direct result of a traumatic event on March 23, 2009, and she was denied due process because multiple ALJs heard the trial testimony.

II.

The scope of our review of a final agency decision is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re

9

Herrmann, 192 N.J. 19, 27 (2007)). We will uphold an agency's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). However, we are not "bound by an agency's interpretation of a statute or its determination of a strictly legal issue . . . ." Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

We accord deference to the credibility determinations of the ALJ, who had the opportunity to hear the testimony of the witnesses and consider the exhibits. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988). We may not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

Under the Teachers' Pension and Annuity Fund Law, N.J.S.A. 18A:66-1 to -93, an education professional, upon becoming permanently incapacitated, can receive either ordinary disability or accidental disability retirement benefits. Kaspar v. Bd. of Trs. of The Teachers' Pension & Annuity Fund, 164 N.J. 564, 573 (2000). To qualify for ordinary disability retirement benefits under N.J.S.A. 18A:66-39(b), a teacher must demonstrate he or she is "physically or mentally incapacitated for the performance of duty and should be retired." A teacher has

10

the burden of proof. <u>Bueno v. Bd. of Trs., Teachers' Pension & Annuity Fund</u>, 404 N.J. Super. 119, 126 (App. Div. 2008).

An applicant must establish an incapacity to perform duties in the general area of his or her regular employment, rather than merely showing an inability to perform his or her specific job. <u>See</u> <u>Bueno</u>, <u>see</u> <u>Id.</u> at 130-31. An appellant does not need to prove he or she is "generally unemployable" or "disabled from performing the specific function[s] for which he [or she] was hired." <u>Getty v. Prison Officers' Pension Fund</u>, 85 N.J. Super. 383, 390 (App. Div. 1964). "[T]he criterion is whether or not [the appellant] is employable in the general area of his [or her] ordinary employment . . . ." <u>Skulski v. Nolan</u>, 68 N.J. 179, 205 (1975) (quoting <u>Getty</u>, 85 N.J. Super. at 390).

Applying <u>Skulski</u> and <u>Bueno</u> with our limited scope of review, there was nothing arbitrary, capricious or unreasonable in the Board's decision. The ALJ weighed the expert testimony and concluded that Dr. Chelder's opinion regarding appellant's health and ability to work as a teacher was more persuasive than the opinion presented by Dr. Bereanu.

Appellant bore the burden of proving by a preponderance of the credible evidence that the 2009 incident was "the essential significant or the substantial contributing cause of [her] resultant disability." <u>Gerba v. Bd. of Trs. of the Pub.</u>

A-2999-18T3

Emps.' Ret. Sys., 83 N.J. 174, 186 (1980) (finding the medical evidence demonstrated the incident aggravated the progression of an arthritic condition but failed to establish the claimant's disability was a direct result of the injury for an award of accidental disability benefits).

In this case, there was ample evidence in the record that appellant's cognitive symptoms were attributable to her pre-existing psychological conditions and not the residual effect of any injuries she sustained in the incident. Moreover, Doctors Bereanu and Chelder agreed that appellant's cognitive symptoms are worsening over time, instead of improving, as would be expected of cognitive complaints emanating from a physical injury. And, neither expert could opine as to the cause of appellant's migraine headaches, leading the ALJ to accept Dr. Chelder's assessment that appellant's migraine headaches are also related to appellant's pre-existing psychological problems.

III.

We are unpersuaded by appellant's argument that she was denied due process because multiple ALJ judges presided over the hearing. Here, ALJ Fritch, the substituted judge, reviewed the transcribed testimony of appellant's first day of testimony and the transcribed testimony of Dr. Bereanu. Moreover, ALJ Fritch presided over the hearing when appellant testified again, and he had

the ability to assess her credibility and demeanor. ALJ Fritch also heard testimony from appellant's fiancé and Dr. Chelder.

We conclude there is sufficient credible evidence to support the Board's determination that appellant's disability was not the direct result of a traumatic event, and therefore she is not entitled to accidental retirement benefits or ordinary disability retirement benefits.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2999-18T3