**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3627-19

KURT HUGHES,

Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

Respondent-Respondent.

---

Submitted April 26, 2021 – Decided May 21, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Board of Trustees, Public Employees' Retirement System, Department of the Treasury, PERS No. 2-1314532.

Pender & Strickland, LLC, attorneys for appellant (Teddy C. Strickland, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jeffrey D. Padgett, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Kurt Hughes, an assistant fire chief at a State psychiatric facility, appeals the denial of his claim for accidental disability retirement benefits arising from being bitten in the hand by a resident in March 2014. He further appeals the denial of ordinary disability benefits stemming from an injury he sustained to his lumbar spine in April 2016 when moving a chair at work. Petitioner contends the latter injury, combined with deficits from his prior injury, rendered him permanently disabled, entitling him to a disability retirement pension paid by the Public Employees Retirement System ("PERS").

The PERS rejected petitioner's application, finding him ineligible for benefits under either the accidental or ordinary disability criteria. Relying upon a medical evaluation performed by its examining physician, the PERS concluded the episodes in question did not cause petitioner to be permanently disabled.

Petitioner challenged the agency's determination at a hearing before an administrative law judge ("ALJ"). In addition to his own testimony describing the incidents and his symptoms, petitioner presented expert opinions from his treating physician. The agency countered with the testimony of its own medical expert. After considering these proofs, the ALJ found the agency's expert more credible and found petitioner ineligible.

The Board of the PERS adopted the ALJ's determination in a final agency decision dated April 16, 2020. This appeal by petitioner ensued. Applying our limited scope of review to pension agency decisions of this nature, we affirm.

The PERS statute authorizes the payment of benefits to eligible PERS members for both ordinary and accidental disability retirement. N.J.S.A. 43:15A-42, -43. As for accidental disability, PERS members are eligible if they are "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of [their] regular or assigned duties." N.J.S.A. 43:15A-43. One of the elements of such an accidental disability, pertinent here, is that the member demonstrate he or she "is mentally or physically incapacitated from performing his usual or any other duty." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 212-13 (2007).

The member applying for benefits bears the burden of proving these elements. Id. at 212. "[T]he member must be permanently and totally disabled, mentally or physically, from performing his own or any other available job." Id. at 195 (emphasis in original). This threshold is extremely high to "cull[] out all minor injuries; all major injuries that have fully resolved; all partial or

temporary disabilities; and all cases in which a member can continue to work in some other capacity." Ibid.

By comparison, to qualify for ordinary disability retirement benefits under N.J.S.A 43:15A-42, the public employee does not have to prove disability caused by a "traumatic" accidental workplace injury. Even so, the member still bears the burden of proving permanent and total disability from performing his or her normal employment duties. Bueno v. Bd. of Trs., Teachers' Pension & Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008) (citing Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008)). The question is whether the person "is employable in the general area of his ordinary employment, as distinguished from whether he is generally unemployable or is disabled from performing the specific functions for which he was hired." Skulski v. Nolan, 68 N.J. 179, 206 (1975) (quoting Getty v. Prison Officers' Pension Fund, 85 N.J. Super. 383, 390 (App. Div. 1964)); see also Bueno, 404 N.J. Super. at 131 (citing Skulski).

The scope of appellate review of a pension board's decisions in such fact-sensitive matters is limited. Our review "is generally limited to a determination of whether the decision is arbitrary, capricious, or unreasonable or lacks fair support in the record." Caminiti v. Bd. of Trs., Police & Firemen's Ret. Sys.,

431 N.J. Super. 1, 14 (App. Div. 2013) (citing Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009)).

It is well established that the agency's factual determinations are presumptively correct, and on review of the facts, a court will not substitute its own judgment over that of an agency where the agency's findings are supported by sufficient credible evidence. Sager v. O.A. Peterson Const., Co., 182 N.J. 156, 164 (2004); see also Atkinson v. Parsekian, 37 N.J. 143, 149 (1962) (citing Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951)); Goodman v. London Metals Exch., Inc., 86 N.J. 19, 28 (1981); Bd. of Educ. of Englewood Cliffs, Bergen Cnty. v. Bd. of Educ. of City of Englewood, Bergen Cnty., 257 N.J. Super. 413, 456 (App. Div. 1992). The Board and other pension agencies are owed deference in their implementation of the retirement benefits statute. Russo v. Bd. of Trs., Police & Fireman's Ret. Sys., 206 N.J. 14, 27 (2011). However, we are not "bound by an agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

Applying these familiar standards to the present case, we are satisfied the decisions of both the ALJ and the Board rejecting petitioner's medical eligibility are amply supported by substantial credible evidence in the record. The denial

of benefits was neither arbitrary nor capricious. As the ALJ found, and the Board agreed, petitioner did not meet his burden of proving a permanent disabling injury proximately caused by either of the two incidents, whether considered singly or in combination.

The ALJ found particularly credible the detailed medical opinions set forth in the testimony of the Board's examining physician, Dr. Arnold Berman. Dr. Berman evaluated petitioner's injuries from the March 2014 hand-biting incident and the April 2016 chair-lifting incident. The doctor reviewed medical records associated with both incidents, considered petitioner's subjective complaints of pain and other symptoms, and conducted a multi-faceted physical examination.

With respect to petitioner's claims of permanent arm and hand injury, Dr. Berman opined there is an insufficient objective basis to support those claims. Among other things, Dr. Berman noted that a diagnosis of the specific hand and arm nerves in question should not be made without an electromyography ("EMG"), which petitioner never had performed despite the recommendation. The expert explained the lack of an EMG test means "you're left with the decision making that's based upon other factors, such as atrophy." Dr. Berman measured for atrophy in petitioner's arm and found none. He also conducted

diagnostic tests that found no loss of sensation in petitioner's ulnar nerve, nor any motor loss. In sum, there were no clinical findings of disability in his right arm.

Further, upon reviewing MRIs taken of petitioner's elbow and forearm, Dr. Berman concluded "it would be impossible that that ulnar nerve could have been injured with this human bite . . . [as] there was no permanent injury." The expert did not believe the bite could have caused injury to petitioner's ulnar nerve because it was "on the exact opposite side of his forearm, on the lateral side." He elaborated the "bite was on the outside of the arm, not the inside of the arm. It was not in any proximity, nowhere near the ulnar nerve, and I can’t see how that could have affected the nerve."

Dr. Berman noted other causes could have affected the ulnar nerve, such as "long-time repetitive activity, which is the most common cause of it." In addition, Dr. Berman found it significant that petitioner worked for two years following the biting incident, which suggests "he was fine" and not permanently injured by it.

With respect to petitioner's claim of a permanent job-related back injury, Dr. Berman likewise found no objective medical basis to support the claim. He

repeatedly stated that his physical examination of petitioner's spine did not correlate with petitioner's subjective complaints.

According to Dr. Berman, petitioner exhibited "minor disc bulges that are degenerative in nature," noting that those kind of bulges "occur in the normal population about 70 percent of the time of his age group." Although MRI studies revealed multiple disc bulges at almost every level of petitioner's lumbar spine, Dr. Berman explained that the disc bulges are degenerative in nature and "could not be caused by trauma." In analyzing these results, Dr. Berman stated "[i]t would be impossible to have these multiple bulges to occur from the spine incident." He added that an annular tear could not have been produced by the 2016 back incident.

Dr. Berman measured for atrophy in both of petitioner's legs and found both to be within normal range. His administration of a straight leg raising test did not reveal any radiculopathy. Nor was he persuaded that radiculopathy was shown by the radiology findings.

In an effort to account for why petitioner reported ongoing symptoms in his back, Dr. Berman testified:

> There could be pain in his back in this particular patient, because he has facet hypertrophy. He has bone spurs. He has multiple reasons to have pain in his back. Whether or not that pain is significant or disabling has

> to be verified by an examination that's a hands-on exam. I did the hands-on exam. There's no verification of his complaints. They couldn't be verified. That doesn't mean he doesn't have a little pain, but it does mean he doesn't have any disabling pain for sure.

With respect to petitioner's assertion that his back injury has rendered him permanently disabled at work, Dr. Berman stated:

> Based upon his back, you know, [petitioner] has these minor common MRI findings, but he has -- he had nothing on the physical exam to validate them. If he has pain, I would not argue that he has pain or he doesn't have pain. If you have minor degenerative changes, it's possible to have pain. But the thing we could be a hundred percent certain of, that this pain is not disabling, because the examination showed that he was okay.

In opposition to Dr. Berman, petitioner presented competing expert testimony from a treating physician. Petitioner also pointed to written medical evaluations conducted in connection with his separate claims for workers compensation benefits. Those evaluations reflected that, after petitioner's back injury, he was no longer able to return to work and perform his duties. Petitioner also relied on a Functional Capacity Evaluation ("FCE") that reached similar conclusions.

Upon sifting through this medical evidence, the ALJ concluded the findings and opinions of Dr. Berman were more persuasive than the contrary

proofs relied upon by petitioner. The ALJ found Dr. Berman had articulated sufficient grounds for why he disagreed with the other medical evaluators. We defer to the ALJ's credibility assessment and "feel for the case."

"The credibility of [an] expert and the weight to be accorded his testimony rests in the domain of the trier or fact." Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App Div. 1961); see also N.J. Div. of Child Prot. and Permanency v. M.M, 459 N.J. Super. 246, 258 (App. Div. 2019) (citing City of Long Branch v. Liu, 203 N.J. 464, 491 (2010)). We are mindful that, as a general proposition, "where the medical testimony is in conflict, greater weight should be accorded to the testimony of the treating physician" as opposed to an evaluating physician, who has only met with the employee on one occasion. Bialko v. H. Baker Milk Co., Inc., 38 N.J. Super. 169, 171-72 (App. Div. 1955); Bober v. Independent Plating Corp., 28 N.J. 160, 167 (1958); Mernick v. Div. of Motor Vehicles, 328 N.J. Super. 512, 522 (App. Div. 2000) (quoting Bober, 28 N.J. at 167). However, that general proposition is not immutable. Here, the evaluating physician, Dr. Berman, provided sufficient credible reasons for disagreeing with petitioner's treating doctor.

In addition, the medical evaluations and FCE that supported petitioner's separate claims for workers compensation benefits, while relevant, do not

control the outcome of this pension benefits case. The present matter involves a different set of statutory criteria administered by a different State agency. In addition, the ALJ had the benefit of a fuller and updated record than what was developed earlier on the unemployment claim. Dr. Berman reasonably explained why he differed with contrary opinions from the workers compensation matter concerning causation and permanency.

In sum, although the matter is not free from doubt, there is ample substantial evidence in this record to support the Board's final agency decision. The denial of permanent disability pension benefits to petitioner was not arbitrary or capricious.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION