**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2083-22

PATRICIA TOSCANO,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued April 17, 2024 – Decided April 30, 2024

Before Judges Firko and Susswein.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. xx2390.

Samuel Michael Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, PC, attorneys; Samuel Michael Gaylord, on the brief).

Allyson V. Cofran, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant

Attorney General, of counsel; Allyson V. Cofran, on the brief).

PER CURIAM

Before this court for a second time, we consider petitioner Patricia Toscano's appeal from the March 16, 2023 order of respondent Board of Trustees, Public Employees' Retirement System (Board) denying her application for ordinary disability retirement benefits. On remand, the Board complied with our instructions and addressed our concerns with its first denial order. Because we conclude the Board's decision was supported by the credible evidence and was neither arbitrary nor capricious, we affirm.

I.

As we set forth the relevant facts in our prior decision, we need not repeat them extensively here. See Toscano v. Bd. of Trs. Pub. Employees' Ret. Sys., No. A-0861-20 (App. Div. May 9, 2022). In the present appeal, petitioner, who was formerly employed by the Greenbrook Board of Education (GBOE), asserts she established she is totally and permanently disabled from the performance of her regular and assigned job duties as a paraprofessional instructional aide for

special needs students, and therefore, she qualified for ordinary disability retirement benefits.[1]

In October 2013, petitioner fell after her feet were struck by a student pushing in his chair. Plaintiff sustained injuries to her head, left elbow, and left hand and underwent left wrist surgery due to nerve damage. She was treated by Dr. Erin Elmore for a concussion and experienced side effects from a medication that she claimed caused her to lose most of her vision and speech. In March 2014, petitioner returned to work at GBOE after being cleared by her physician but testified at the administrative hearing that she "tried [her] best to do [her] job" but "it was very difficult," because she experienced "a hard time walking," had "a lot of tingling and sizzling pain throughout [her] body," and her arm "wasn't the same anymore."

In March 2016, petitioner tripped on a music box at work and fell backwards on her left arm. Petitioner claimed the incident caused further damage to her left arm, jolted her neck, and resulted in another concussion. She returned to work a month-and-a-half later, but claimed she had "severe trouble" working and complained of headaches, neck pain, and problems walking due to

---

[1] During the first hearing, petitioner withdrew her claim for accidental disability benefits and continues to abandon that claim.

A-2083-22

"severe pain" in her feet and leg, tingling in her hands and fingertips, and had difficulty standing.

In March 2017, petitioner underwent a three-level cervical fusion. She was out of work for six months following the surgery and received workers' compensation benefits. She returned to work in Fall 2017, but had difficulty performing her duties. Petitioner had to wear a neck brace, which left her with right facial pain and a permanently dislocated jaw. In March 2018, petitioner stopped working.

In April 2018, petitioner applied for accidental disability retirement benefits based on the 2013 and 2016 incidents, which as stated, she later converted her application to ordinary disability benefits. In November 2018, the Board initially deemed petitioner "totally and permanently disabled from the performance of her regular and assigned duties" as defined by N.J.S.A. 43:15A-43, but postponed its decision as to accidental disability until it obtained clarification from the Board's expert neurologist, Dr. Steven Lomazow, "on the issue of direct result." In the interim, the Board granted petitioner ordinary disability retirement benefits effective May 1, 2018.

After receiving additional healthcare documentation and non-healthcare correspondence from petitioner, Dr. Lomazow issued an addendum to his report.

A-2083-22

In his initial August 14, 2018 report, Dr. Lomazow concluded that petitioner was "disabled" as a result of the "accumulative effect" of injuries resulting from her 2013 and 2016 incidents and that she was not "malingering." The addendum noted the additional documents "include a rather damning neuropsychological evaluation by Karen Tennyson, Ph.D., on January 2, 2014, at which time Dr. Tennyson felt that [petitioner] was grossly exaggerating her complaints and questioned the fact whether she had a concussion at all." After receiving the additional records, Dr. Lomazow revised his prior opinion and concluded that petitioner was not totally and permanently disabled from a neurological standpoint.

Thereafter, on March 25, 2019, after considering the submissions, the Board reversed its earlier decision, thus ceasing petitioner's ordinary disability retirement benefits and denying her application for accidental disability retirement benefits. The Board found "both incidents were identifiable as to time and place, undesigned and unexpected," and "occurred during and as a result of the performance of [petitioner's] regular and assigned duties," but "determined there is no evidence in the record of direct causation of a total and permanent disability from either incident."

A-2083-22

Following a hearing, the Administrative Law Judge (ALJ) concluded "there is no objective evidence of injury to explain [petitioner]'s symptoms." Ultimately, the ALJ found Dr. Lomazow's opinion to be more compelling than Dr. Elmore's opinion that petitioner was disabled from "chronic and constant neurological pain based solely upon [her] subjective reporting of symptoms of chronic pain."

The ALJ determined that petitioner failed to prove by a preponderance of the credible evidence that "she is permanently and totally disabled from her regular and assigned duties as a paraprofessional, or that she is physically incapacitated from performing her usual or any other duty that her employer is willing to offer as a result of her reported disabilities of chronic neurological pain." In addition, the ALJ relied on Dr. Lomazow's opinion that petitioner is "most probably" psychologically disabled as a result of her somatoform disorder.[2] The ALJ acknowledged petitioner's alleged psychological disability was not presented in her application for accidental or ordinary disability

---

[2] "Somatic symptom disorder is characterized by an extreme focus on physical symptoms—such as pain or fatigue—that causes major emotional distress and problems functioning." Somatic Symptom Disorder, MAYO CLINIC, (May 8, 2018), https://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/ symptoms-causes/syc-20377776.

A-2083-22

benefits, but noted that even if petitioner alleged a psychological disability, he would conclude she failed to sustain her burden of proof.

The ALJ emphasized Dr. Lomazow rendered a "net opinion" on petitioner's neuropsychological state because he did not perform a neuropsychological examination and did not rely "on Dr. Tennyson's report to establish objective facts upon which to formulate his own diagnosis, but rather [was] only accepting the diagnosis reached by Dr. Tennyson and repeating it as his own opinion." The ALJ concluded that petitioner "failed to prove that she is totally and permanently disabled from the performance of her job duties as a result of a psychological disorder." On October 22, 2020, the Board adopted the entirety of the ALJ's decision and denied petitioner's application for accidental and ordinary disability retirement benefits.

Petitioner appealed. We affirmed the Board's denial of accidental disability retirement benefits but vacated the Board's denial of ordinary disability benefits and remanded the matter. Toscano, slip op. at 2. We found that since petitioner was only challenging the denial of ordinary retirement disability benefits, it no longer mattered whether those medical conditions and resulting pain were job-related. Id. at 33. We stated: "What does matter is whether the aggregate impact of those conditions rendered her totally and

permanently disabled from performing her job duties." Ibid. The conditions include the three-level cervical fusion, permanently dislocated jaw, neuralgia resulting from her dislocated jaw, degenerative spine changes, and hand and wrist injuries. Ibid.

On March 16, 2023, the Board issued a final agency decision, again denying petitioner's application. The Board found that petitioner failed to meet her burden by a preponderance of the evidence that she was permanently and totally disabled from performing her regular and assigned duties "or that she is physically incapacitated from performing . . . [any] other duty that her employer is willing to offer as a result of her self-reported chronic neurological pain."

In the present appeal, petitioner asserts she established she was totally and permanently disabled from the performance of her regular and assigned duties as a paraprofessional instrumental aide, and therefore, she qualified for ordinary disability retirement benefits.

II.

The standard of review applicable to an appeal from a state agency decision is well established. "Judicial review of an agency's final decision is generally limited to a determination of whether the decision is arbitrary, capricious, or unreasonable or lacks fair support in the record." Caminiti v. Bd.

of Trs., Police & Firemen's Ret. Sys., 431 N.J. Super. 1, 14 (App. Div. 2013) (citing Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223-24 (2009)). In reviewing an administrative decision, we ordinarily recognize the agency's expertise in its particular field. Ibid. The party who challenges the validity of the administrative decision bears "the burden of showing that it was arbitrary, unreasonable or capricious." Boyle v. Riti, 175 N.J. Super. 158, 166 (App. Div. 1980).

To qualify for ordinary disability retirement benefits under N.J.S.A. 43:15A-42, a member must demonstrate he or she "is physically or mentally incapacitated for the performance of duty and should be retired." The member must prove he or she has a disabling condition and must provide expert evidence to sustain the burden. Bueno v. Bd. of Trs., Teachers' Pension & Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008); see also Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008).

The applicant must also show the disabling condition is total and permanent. See Patterson, 194 N.J. at 43; Bueno, 404 N.J. Super. at 124. In addition, "[t]o qualify for disability retirement, a member must be unable to perform his or her regular and assigned duties due to a permanently disabling medical condition present at the time the member separates from service, as a

result of which disabling condition the member should be retired." N.J.A.C. 17:2-6.1(g)(3).

A disabling condition requires an applicant to prove "incapacity to perform duties in the general area of his [or her] ordinary employment." Skulski v. Nolan, 68 N.J. 179, 205 (1975). An applicant is "physically or mentally incapacitated" if he or she is not "employable in the general area of his [or her] ordinary employment." Bueno, 404 N.J. Super. at 129 (quoting Getty v. Prison Officers' Pension Fund, 85 N.J. Super. 383, 390 (App. Div. 1964)). Moreover, an applicant is not inherently disabled merely because he or she "is disabled from performing the specific function for which he [or she] was hired." Ibid. (quoting Getty, 85 N.J. Super. at 390).

We note that "the weight to which an expert opinion is entitled can rise no higher than the facts and reasoning upon which that opinion is predicated." Johnson v. Salem Corp., 97 N.J. 78, 91 (1984) (internal citation omitted). It is within the province of the finder of facts to determine the credibility, weight, and probative value of the expert testimony. State v. Frost, 242 N.J. Super. 601, 615 (App. Div. 1990); see also Angel v. Rand Express Lines, Inc., 66 N.J. Super 77, 85-86 (App. Div. 1961).

A-2083-22

In its order denying the application for a second time, the Board addressed this court's concerns. The Board found petitioner's "subjective complaints" of pain, not supported by any objective medical evidence, were inadequate to sustain the burden "to demonstrate that she is disabled with chronic pain[,] which prevents her from performing her job duties."

The Board highlighted Dr. Elmore—petitioner's own expert—conceded there was "no objective evidence of injury to explain [petitioner]'s symptoms," and "that she did not review any objective testing results such as an MRI in forming her opinion." In addition, the Board noted the record "was replete with instances of [petitioner]'s treating physicians who found that [her] self-reported complaints were a less-than-reliable basis for a medical diagnosis and inconsistent with their objective medical findings."

Our review of the remand proceeding reflects the Board thoroughly reviewed the facts, made credibility determinations, and concluded petitioner was not entitled to ordinary disability retirement benefits. Given the particular expertise of the Board, it is not our place to second-guess an exercise of discretion to deny benefits when supported by credible evidence in the record. Caminiti, 431 N.J. Super. at 14.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2083-22